THE PLANTERS' MUTUAL INSURANCE COMPANY OF WASHINGTON COUNTY *vs.* JOHN E. ROWLAND.

*Fire Insurance policy—Endorsement on Policy—Double insurance—Interest in the Insured—Right of Insured to recover—Evidence—Expert.*

Unless restricted in some way by the insurance policy, the insured may make alterations in the property without notice to the insurer, provided such alterations do not thereby increase the risk.

Where the class of hazards annexed to a fire insurance policy, is not found in the record of the case, the Court cannot assume as matter-

Planters' Mut. Ins. Co. of Washington County *vs.* Rowland.

of-fact, that the mere change in the machinery of the mill—the property insured—from the burr process to the roller process, was such an alteration as would, according to such class of hazards, increase the risk.

Where an endorsement on a policy of insurance to the effect that whenever any alteration is to be made in the property, the insured shall make application to the secretary or agent, who shall examine the property, and certify whether the hazard be thereby increased or not, &c., is not referred to either in the policy or in the by-laws, and there is nothing to show that the parties meant it to be a part of the contract, it will be regarded merely as the act of the insurer, and, therefore, not binding on the insured.

To constitute a double insurance, there must be two or more policies insuring the same property.

The insured, after the issuance of the policy of insurance, leased the property for a term of five years, with the privilege on the part of the lessees to buy it at any time during the lease at a price named. HELD:

That it could not be said that the insured had thereby parted with his interest in the property, or that he had in any manner aliened it, within the meaning of the law.

The fact that the property at the time of its loss is in the possession of lessees of the insured, does not affect his right of property, or his right to recover for its loss.

The rates of insurance charged upon burr flouring mills and roller mills, respectively, are admissible as evidence to be considered in connection with other facts, in determining the question whether the risk was increased by changing the machinery of a mill from the burr to the roller process.

And to assist the jury in determining this question, a witness, who is an expert, may be asked to "state the physical conditions or facts in the operation of burr and roller flour mills."

APPEAL from the Circuit Court for Washington County. The case is sufficiently stated in the opinion of the Court. Judgment was rendered for the plaintiff for $5,133.33, and the defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, and BRYAN, J.

*Edward Stake,* and *Hy. Kyd Douglas,* for the appellant.

*J. Clarence Lane,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The property insured in this case was a flour and fertilizer mill belonging to the appellee. After the policy was issued, the appellee leased the mill to the Messrs. Aiken & Sons for five years, with the privilege on their part, to make " *alterations and to refit the mill with other or new machinery,*" upon the condition, however, that they should upon the expiration of the tenancy, replace the *old machinery.* The Messrs. Aiken entered into possession under the lease, and finding it desirable to change the machinery, they took out so much of the old machinery as was used for the manufacture of flour by *the burr process,* and substituted therefor the *roller process.* This was done at their own expense, and the new machinery being their property under the terms of the lease, it was insured by them. About two years afterwards, the mill was destroyed by fire, and this suit is brought by the appellee to recover the loss sustained by him.

To this action, several defences are set up by the appellant. In the first place, it is contended, that the alteration in the machinery, without the consent of, or notice to, the company, whether increasing the risk or not, *per se* avoided the policy. If this be so, it must be by reason of some stipulation between the parties, for unless restricted in some way by the policy, we take it to be well settled, that the insured may make alterations in the property without notice to the insurer, provided such alterations do not thereby increase the risk. So the question resolves

itself into this, is there any stipulation in the policy, or by-laws, which forfeits the policy, upon the failure on the part of the appellee to give notice to the company of the alterations in the machinery, although *such alterations did not increase the risk?* The policy does provide that it "shall cease and be of no effect," if the property shall *be so altered*, or *appropriated*, or *used* for the purpose of carrying on therein any trade or business, which according to the class of hazards thereto annexed, *would increase the risk*, unless it be by the consent of the company in writing, endorsed upon the policy. This provision is one usually to be found in fire policies, and there ought not, it seems to us, to be any difficulty in its construction. The property here insured, was a flour mill, and the rate of insurance was fixed and paid according to the risk incident to that business. The insurer assumed this and no other risk, and if the appellee proposed so to alter the mill, or to use it for the purpose of carrying on any trade or business, which according to the class of hazards annexed to the policy would increase the risk, he was bound to get the consent of the company in writing endorsed upon the policy. Without such consent, the alteration or use *ipso facto* avoided the policy. The question as to the increase of risks was no longer an open question, because the parties had by their agreement made such alteration or use material. *United States Fire and Mar. Ins. Co. of Balto. vs. Kimberly*, 34 *Md.*, 224; *Lounsbury vs. Protection Ins. Co.*, 8 *Conn.*, 459; *Diehl vs. Adams Co. Mut. Ins. Co.*, 58 *Penn.*, 443; *Lee vs. Howard Fire Ins. Co.*, 3 *Gray*, 583. The question then is, whether the alterations made by the appellee in the machinery were such as would according to the class of hazards annexed to the policy increase the risk. The class of hazards annexed to the policy is not to be found in the record, and we cannot assume as matter-of-fact, that the mere change in the machinery of the mill, from the *burr process to the*

*roller process,* was such an alteration, as would, according to the class of hazards annexed to the policy, increase the risk.    On the contrary, the proof shows that the appellant had permitted other mill owners to make this change without objection, and without increasing the rate of insurance.    This provision therefore in the policy has not in our opinion any bearing upon the question.

But the appellant also relies upon an endorsement on the back of the policy to the effect, that whenever any alteration is to be made in the property the insured shall make application to the secretary or agent who shall examine the property, and certify whether the hazard be thereby increased or not, &c.    Now, an endorsement on the back of a policy may be regarded as part of the contract, provided it is referred to in the policy as constituting part of it.    If, however, there be no reference whatever to it in the policy, nothing to show that the parties meant it to be a part of the contract, it will be regarded merely as the act of the insurer, and not therefore binding on the insured.    *Stone vs.  U.  S.  Casualty Co.,* 34 *N. J. Law,* 371 ; *Kingsley vs. New Eng. Mut. Fire Ins.  Co.,* 8 *Cushing,* 393 ; *Ferrer vs. Home Mut. Ins. Co.,* 47 *Vt.,* 416 ; *Farmers' Ins. & L. Co. vs. Snyder,* 16 *Wend.,* 481 ; *Bize vs. Fletcher, Doug.,* 291, *note.*

In this case there is no reference either in the policy or in the by-laws to the direction or indorsement on the back of the policy, and it cannot therefore be regarded as part of the contract.    It is what it professes to be, merely *directory,* and *not obligatory.*    And besides, it does not provide for a forfeiture of the policy upon the failure on the part of the insured to make such application, and forfeitures by implication are not favored.    We are of opinion therefore, that there is no stipulation in this policy which *per se* avoids it upon the failure of the appellee to give notice to the company of the alteration in the machinery of the mill, provided such alteration did not increase the

risk. Whether or not the risk was thereby increased, was a question which the Court properly submitted to the finding of the jury.

And this brings us to the next, and the more important question, assuming that the change in the machinery from the burr to the roller process, did increase the risk, was notice given to the company as required by the 10th sec. of the by-laws? This section provides, that if the property insured shall be rendered more hazardous, by any means within or not within the control of the insured, notice shall be given to the secretary, and the directors may elect either to continue the insurance upon the same terms, or at higher rates, or may cancel the policy. Nothing is said about *written notice;* all that is required of the insured, is that he shall give notice to the proper officer of the company, and then the directors may elect, &c.

Was notice then given by the appellee to the company of the alteration about to be made in the machinery? Now what is the evidence? The appellee proved, that before the alterations were made, he gave notice of such alterations to Pole, the general agent of the company, its treasurer and one of its directors, and as such duly authorized to receive risks and notices of alterations in the property; and that Pole stated to the appellee in reply that it was all right, that the company had determined that the alterations in the machinery as proposed did not increase the risk—that it had been so decided in the case of Kemp's Mill, where the *roller process* had been substituted for the *burr process*—that no additional premium note was required of the appellee after the notice thus given, nor was any objection ever made that the alterations increased the risk, and that nearly two years after such alterations, the board of directors levied an assessment on the premium note of the appellee, to meet losses sustained by the company, which assessment was paid. He further proved, that Kemp, and Young, and Huyett, and Neikirk,

all mill owners, had made application to the appellant for permission to substitute the roller process for the burr process—that their several applications were granted, and granted without demanding any higher rate of insurance.

This evidence, if true, not only proves that notice was in fact given to the proper officer of the company, but it explains why no action was taken by the directors upon the application of the appellee. They had already decided upon the application of other mill owners, that the substitution of the roller process for the burr process, did not increase the risk, and no further action therefore was necessary. If the notice required by the by-laws was thus given, the question of waiver and estoppel becomes immaterial.

Passing then from this branch of the case, we come to the further defence, that there was a *double insurance* on the property. Now what are the facts relied on to support this defence? The mill was, as we have seen, leased to Messrs. Aiken for five years, and while in possession of the mill, part of the old machinery was taken out by the lessees, and new and different machinery put in its place. This was done at their expense and at a cost of about nine thousand dollars. The new machinery which belonged to them was insured, and the policies of insurance were assigned to the appellee to secure the payment of two thousand dollars loaned by him to the lessees. The appellee thus held, it is true, two policies, one on the mill and old machinery, property which belonged to him, and the other, on the new machinery, which belonged to the Messrs. Aiken, but the two policies were in different rights, and upon different property. In no sense could this be considered a *double insurance,* to constitute which there must be two or more policies insuring the same property.

Then again it was said, there was a forfeiture of the policy, because the appellee had parted with his interest

in the property. But there is no ground on which this contention can be supported. He had leased the mill for a term of five years, with the privilege on the part of the lessees to buy it at any time during the lease at a price named. They did not agree to buy it, but merely had the privilege of buying it, and as matter-of-fact the record shows they never did buy it. They were in possession under the lease, but *the title and right of property* were in the appellee. It cannot be said then that he had parted with his interest, or that he had in any manner aliened it within the meaning of the law. *Phillips vs. Merrimack Mut. Fire Ins. Co.*, 10 *Cush.*, 350; *Hill vs. Cumberland Val. Mut. Protection Co.*, 59 *Penna.*, 474; *Pitney vs. Glenns Falls Ins. Co.*, 65 *N. Y.*, 6; *Washington F. Ins. Co. vs. Kelly*, 32 *Md.*, 421.

We see no objection to the rule of damages laid down by the Court. The appellee was entitled to recover the full loss or damages sustained by him, to be estimated, in the language of the policy, according to the actual value of the property at the time of the fire, with interest thereon, in the discretion of the jury, after three months from the date of notice and proof of loss. And so the Court instructed the jury.

The theory upon which the appellant's ninth prayer is based, namely that the appellee had no such interest or property in the old machinery, as would entitle him under the policy to recover for its loss, because it was in the possession and under the control of the lessees of the mill, is clearly erroneous. The possession by the lessees in no manner affected the appellee's right of property—it was still his property, and for its loss he was entitled to recover. It follows from what we have said, that there was no error in granting the appellee's prayers and in rejecting the several prayers offered by the appellant.

Three exceptions were also taken to certain evidence offered by the appellee. In the first exception, the witness, Clark, testified that he was the general agent and

inspector of the Hartford Insurance Company, and as such had made repeated examinations of hazards of burr and roller mills.

He was then asked the following question :

"State if you know, the usage of underwriters respecting the rates charged in burr flouring mills, and roller mills ; are the rates the same or different?"

One of the questions to be determined by the jury was whether the substitution by the appellee of the roller process in the place of the burr process, had increased the risk. The witness was not asked to give his opinion as an expert in regard to the risk, but to prove a fact, whether insurance companies charged the same or different rates on burr and roller mills. We do not mean to say that the rates of insurance are to be considered a decisive test as to the risk, but it was evidence to go to the jury to be considered in connection with other facts, in determining the question of increase of risk. And so with regard to the evidence offered in the second and third exceptions. The witnesses Clark and Pease, were both experts, and thoroughly acquainted with the practical working of the machinery used in the manufacture of flour by the burr and roller processes, and had knowledge of the details of the workings of each. They were then asked the following question:

"State the physical conditions or facts in the operation of burr and roller flour mills?" The jurors were not millers, nor experts in the manufacture of flour, and if they were to determine whether or not the hazard was increased by altering the mill from one process to another, they were entitled to the facts connected with the operation of both. *Joyce vs. Maine Ins. Co.*, 45 *Maine*, 168; *Teerpening vs. The Corn Exchange Ins. Co.*, 43 *N. Y.*, 279; *Lyman vs. State Mut. Fire Ins. Co.*, 14 *Allen*, 335 ; *Luce vs. Dorchester Ins. Co.*, 105 *Mass.*, 298.

*Judgment affirmed.*

(Decided 16th December, 1886.)