Opinion
COBEY, Acting P. J.
Plaintiff, estate of Audie Murphy, by its administratrix, Pamela Murphy, appeals from a judgment declaring that defendant Gulf Insurance Company’s limit of liability generally, under its insurance policy No. AH 33819, to plaintiff is $100,000. This policy by appropriate indorsement covered the damages arising from Murphy’s death in an airplane crash on May 28, 1971.[1]
The specific issue raised by plaintiff’s complaint for declaratory relief and defendant Gulfs answer thereto was whether indorsement No. 2, reducing the policy’s coverage from an overall $2 million generally to $100,000 per passenger, was invalid because of the alleged lack thereon of the requisite approving signature. Gulf tied a first amended cross-complaint seeking reformation of the policy by adding thereto such a signature if one were found to be lacking.
*307 Trial was had before a jury, which returned a special verdict finding that the requisite signature was on indorsement No. 2, but also finding that the John Orcutt Agency, a Denver insurance broker, in obtaining the policy, was not the agent of the insured (Colorado Aviation, Inc.), that the insured did not intend to limit the coverage of the policy to $100,000 per passenger, and that the insured did not request of the John Orcutt Agency that the liability be so limited. The trial court accepted and followed in its subsequent findings of fact only the jury’s verdict with regard to the presence of the signature on the indorsement. It, in fact, signed findings contrary to the special verdict in the other three respects mentioned. The trial court also concluded as a matter of law that the policy was unambiguous—presumably in the respect challenged.
Plaintiff attacks the judgment under appeal on primarily three grounds. She contends that: (1) as a matter of law the policy’s maximum coverage was generally $2 million per accident; (2) the trial court committed reversible error in disregarding three of the jury’s four answers to the special interrogatories submitted to it; and (3) the trial court abused its discretion in refusing at the start of the trial and thereafter to broaden the issues raised by the complaint and answer before it.
We perceive no error and will affirm on the basis of the following rationale. Indorsement No. 2 was an effective indorsement, although it was not referenced on the declarations page of the policy. The conflict between this indorsement and the remainder of the policy did not render the indorsed policy ambiguous on the coverage point at issue because the indorsement controlled on this point. This being so, the policy was not reasonably susceptible to the meaning urged by plaintiff with respect to this point and therefore the maximum coverage of the policy with respect to passenger liability must be determined from the indorsed policy itself without resort to extrinsic evidence. Finally, the trial court did not abuse its discretion in refusing under the circumstances to broaden the issues before it.
Discussion
1. As a Matter of Law, the Coverage Afforded by the Policy at Issue Was Not $2 Million per Accident
Plaintiff’s contention to the contrary is premised on the fact that the passenger-liability-limiting indorsement (indorsement No. 2), although attached to the policy, was not referred to on the face or *308 declarations page of the policy and that this failure to so reference the indorsement rendered it invalid. There does not appear to be any California cases so holding and we do not regard the cases from elsewhere (see 1 Couch, Insurance (2d ed. 1959) § 4:33, p. 191, fn. 20) as controlling.[2] A careful reading of these out-of-state cases reveals that the courts so ruling were not concerned with the lack of reference per se, but rather with the inadequacy of notice to the insured regarding limitations upon the coverage provided. For example, in one case cited by the plaintiff, the Maryland high court suggested that while “the mere fact of fastening” the indorsement to the policy could not make it part of the contract, reference on either the policy or the indorsement itself to other portions of the contract would be sufficient. (Williams v. New York Life Ins. Co. (1913) 122 Md. 141 [89 A. 97, 99].) Similarly, the New Mexico high court invalidated a ■ limiting indorsement not referenced on the declarations page of the policy because its limiting language was “merely a part of seven lines in one paragraph of a finely-printed two-page endorsement” which the court found to be “obscure.” (Ivy Nelson Grain Co. v. Commercial U. Ins. Co. of N. Y. (1969) 80 N.M. 224 [453 P.2d 587, 589]; see also National Ben Franklin Fire Ins. Co. v. Brown (Tex.Civ.App. 1923) 253 S.W. 632; Planters’ Mut. Ins. Co. v. Rowland (1886) 66 Md. 236 [7 A. 257, 259].)
Judicial focus upon the sufficiency of notice to the insured is evident in two recent cases—Bandy v. Avondale Shipyards, Inc. (5th Cir. 1972) 458 F.2d 900, and Barton v. American Family Mutual Insurance Co. (Mo.App. 1972) 485 S.W.2d 628. In Bandy, the Fifth Circuit affirmed the lower court’s ruling that an indorsement which would preclude coverage of the plaintiff’s injuries was effective although it was not referenced on the declarations page of the policy. The court based its ruling on the fact that the indorsement, which was attached to the policy at the time of delivery, contained ample reference to the rest of the policy so as to identify it as part of the insurance contract. (Bandy v. Avondale Shipyards, Inc., supra, 458 F.2d at p. 904.) Similarly, in Barton the court upheld the validity of an indorsement that was not referenced on the declarations page on the basis that “[d]eliveiy of such policy with the endorsement attached is communication of and adequate notice to the policy holder of its provisions.” (Barton v. American Family Mutual Insurance Co., supra, 485 S.W.2d at p. 631.) As the aforementioned textual authority on insurance contracts states “[t]he manner of making the indorsement ... is *309 immaterial as long as the intent can be ascertained that it is a part of the contract.” (1 Couch, Insurance (2d ed. 1959) § 4:33, p. 191.)
This focus on the substantiality of the notice afforded to the insured regarding the limitations on his coverage rather than upon the means of providing such notice is consistent with recent pronouncements of California courts on the validity of exclusionary clauses in insurance contracts. In State Farm Mut. Auto. Ins. Co. v. Jacober (1973) 10 Cal.3d 193, 201-202 [110 Cal.Rptr. 1, 514 P.2d 953], Justice Tobriner, speaking for the court, noted that such clauses must be “conspicuous, plain and clear” to be valid, and repeated an earlier warning from the court that “any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.” (Italics in original.) (Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]; see also Logan v. John Hancock Mut. Life Ins. Co. (1974) 41 Cal.App.3d 988, 995 [116 Cal.Rptr. 528] (“exceptions and limitations on coverage that the insured could reasonably expect, must be called to his attention, clearly and plainly . . .”). (Italics in original; fn. omitted.)
As already noted, the jury found that indorsement No. 2 was signed at the time of issuance and delivery of the original policy. Such a finding suggests that the indorsement, bearing a separate signature, would have been readily apparent to an insured who took minimal precautions in perusing through his new policy. Indeed, it appears that an officer of Colorado Aviation, Inc. (the insured) made such an exámination and noted the presence of the limitation on coverage. Our examination of the indorsement indicates that there can be no question that it is “conspicuous, plain and clear.” It heads a separate sheet of paper which bears the title “Passenger Limits Of Liability” printed in capital letters one-eighth inch high. (Cf. Cal. U. Com. Code, § 1201, subd. (10).)
We accordingly hold that the insurer’s failure to reference this indorsement on the declarations page of the policy did not vitiate it and that therefore, as a matter of law, the policy at issue did not provide $2 million coverage.
2. Indorsement No. 2 Controls the Meaning of the Indorsed Policy at Issue
It is a well established rule of construction of insurance policies that if the provisions of an effective indorsement conflict with those of the body of the policy, the indorsement controls. (Continental Cas. Co. v. *310 Phoenix Constr. Co. (1956) 46 Cal.2d 423, 431 [296 P.2d 801, 57 A.L.R.2d 914]; Southwestern Funding Corp. v. Motor Ins. Co. (1963) 59 Cal.2d 91, 94 [28 Cal.Rptr. 161, 378 P.2d 361].) This being so, there is no conflict here between indorsement No. 2 and the remainder of the policy, and hence no ambiguity within the indorsed policy upon the point at issue. (See Barton v. American Family Mutual Insurance Co., supra, 485 S.W.2d at p. 632.) Extrinsic evidence regarding the meaning of an instrument may be received only to establish a meaning to which the language of the instrument is reasonably susceptible. (Pacific Gas & E. Co. v. G. W. Thomas Drayage, etc. Co. (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) The indorsed policy at issue was not reasonably susceptible to the meaning urged by plaintiff on the point at issue because such meaning gives no effect to indorsement No. 2. (See Civ. Code, § 1641.)[3]
3. The Trial Court Did Not Abuse Its Discretion in Refusing to Broaden the Issues With Respect to Indorsement No. 2 at the Start of the Trial and Thereafter
The instant action was filed on November 13, 1974. As already noted, the sole issue raised by plaintiff’s complaint and Gulfs answer thereto was whether indorsement No. 2, reducing the policy coverage generally from an overall $2 million per accident to $100,000 per passenger, was invalid because it did not bear the requisite approving signature. A certificate of readiness for trial was filed by all parties on July 14, 1975, indicating, among other things, that the case was then at issue and no further pleadings were contemplated.
At the start of the trial, however, in early February 1976, plaintiff moved to amend her complaint to allege that indorsement No. 2 had never been attached to the policy at issue and had therefore never become a part of the policy. The trial court, after hearing extensive argument and sworn statements by counsel, denied the motion without *311 prejudice. At the close of Gulfs case, plaintiff renewed her motion and the trial court again denied it.
We do not see any abuse of discretion in the trial court’s refusal to broaden the issues in the case under the circumstances presented. Discovery had been completed on the basis that the only issue was whether the requisite signature appeared on indorsement Ño. 2. No inquiry had been made as to whether indorsement No. 2 had been physically attached to the original of the policy. The jury was in the box. The trial was ready to proceed. All that plaintiff had to support her proposed amendment was some indication that the lienholder’s copy of the policy at issue lacked indorsement No. 2. She; however, was in no position to prove this supposed fact readily and if she had done so her proof would have not been conclusive in view of the fact that the certified copy of the policy provided her by Gulf, which she incorporated into her complaint, had as a part thereof indorsement No. 2. In short, the proposed amendment opened up an entirely new field of inquiry without any satisfactory explanation as to why this major change in point of attack had not been made long before trial.
A trial court’s exercise of discretion with respect to amendment of pleadings should be upheld unless clearly abused. (Nelson v. Specialty Records, Inc. (1970) 11 Cal.App.3d 126, 139 [89 Cal.Rptr. 540].) Where inexcusable delay and probable prejudice to the opposing party is indicated, the trial court’s exercise of discretion in denying a proposed amendment should not be disturbed. (Ibid; Hayutin v. Weintraub (1962) 207 Cal.App.2d 497, 507-509 [24 Cal.Rptr. 761].)
Disposition
The judgment under appeal is affirmed.
Allport, J., and Potter, J., concurred.
A petition for a rehearing was denied July 26, 1978, and appellant’s petition for a hearing by the Supreme Court was denied September 14, 1978.

The original of this endorsed policy has been lost. Moreover Gulf itself had no copy of it. The copy of the endorsed policy Gulf furnished plaintiff was found in the files of the hereafter-mentioned Denver insurance broker who procured it. The policy became effective through oral commitment as to the plane involved in the fatal crash about a month before that crash. It was, however, not physically prepared until June 10, 1971, approximately two weeks after the crash.

It can be argued that this case should be decided in accordance with Colorado law, but the parties have not cited to us any controlling Colorado law bearing upon the rationale we have chosen.

This being the case, the trial court was privileged to disregard, as irrelevant, the jury’s answers to the special interrogatories regarding (1) whether the John Orcutt Agency was acting as the agent of the insured in connection with the procurement and issuance of the policy at issue; (2) whether the intent of the insured was to limit the insured’s coverage on passenger liability to $100,000 per passenger; and (3) whether that intent was ever communicated by the insured to the John Orcutt Agency. For the same reason we will disregard the trial court’s aforementioned findings of facts that conflict with these answers of the jury, and we will not decide whether the so-called deposition of Michael Fitzgerald, president of the insured, was properly denied admission in evidence.