[S. F. No. 6179.    Department One.—October 9, 1913.]

W. J. O'NEILL, Respondent, v. CALEDONIAN INSURANCE COMPANY, OF EDINBURGH, SCOTLAND (a Corporation), Appellant.

W. J. O'NEILL, Respondent, v. THE AMERICAN INSURANCE COMPANY (a Corporation), Appellant.

FIRE INSURANCE—AUTO REPAIR SHOP—RISKS PRESUMED TO BE ASSUMED BY INSURER.—Where a rider attached to a fire insurance policy declares that the premises are to be occupied as an "auto repair shop," it must be presumed that the insurance company undertakes to insure against all risks incident to the conduct of that business when carried on in the usual manner.

Id.—Condition Against Gasoline — Oil Emptied from Machine While Undergoing Repairs.—A condition in such policy that the insurer shall not be liable for loss occurring while more than one quart of gasoline is used or kept on the premises, does not exempt from liability for loss from a fire occurring from the ignition of several gallons of gasoline emptied from the leaking reservoir of an automobile brought into the shop for repair.

Id.—Stabling Automobiles on Premises—Gasoline in Reservoirs.—Under a clause in such policy forbidding the admission into the building of any gasoline other than that contained in the tanks of machines "permanently or temporarily stabled therein," the policy is not suspended by the presence on the premises at the time of the fire of several other automobiles, each containing more than one quart of gasoline in its reservoir.

Id.—Suspension of Policy by Presence of Gasoline—Revivor on Removal of Gasoline.—Under the clause in such policy suspending the insurance while more than one quart of gasoline is kept on the premises, the fact that at divers times before the fire considerable quantities of gasoline have been kept thereon in addition to that in tanks of machines and that kept for use in repair work, does not avoid the policy, if no such excess is on hand at the time of fire. As soon as the gasoline was removed from the building the policy, which had been suspended during its presence there, immediately became effective and the insurer became liable for all losses occurring after such removal.

Id.—Warranties and Forfeitures—Construction in Favor of Insured.—A warranty in a fire insurance policy is to be construed most favorably for the insured, and provisions in a policy are always construed so as to prevent a forfeiture, if the language will reasonably permit such a construction.

Id.—Reformation of Policy for Alleged Mistake in Form of Rider.—The insurer is not entitled, in an action by the insured to enforce a policy of fire insurance, to have it reformed because of an alleged mutual mistake of the parties in the form of a rider attached to the policy by the agents of the insurer, when the form used was that attached to a prior policy and the insured was not advised of any change in the form of such rider until after the destruction of the property by fire.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

J. F. Riley, and George Cosgrave, for Appellants.

Sutherland & Barbour, and Chickering & Gregory, for Respondent.

SHAW, J.—The above-entitled actions were brought upon policies of insurance to recover of the respective defendants the proportions due from them, respectively, of a loss to plaintiff from a fire which destroyed his property covered by the policies. By agreement the causes were tried together. A verdict was returned for the plaintiff, stating separately the amount of recovery from each defendant, and judgment was given accordingly. The defendants have each appealed from the judgment and also from an order denying a motion for a new trial.

The most important point urged in the argument is the contention that the verdict is contrary to the evidence. Some related questions will also require consideration, but we proceed first to the main question.

The policies were each in the same form. The one issued by the Caledonian Insurance Company covered the stock of goods and household furniture in the building. That issued by the American Insurance Company insured the building itself. O'Neill occupied the front part of the building, exclusively, using it as a carriage repository and for sale of carriages and agricultural implements. There was a partition across the building forty feet from the rear. In this part, one Haupt carried on a shop for the repair of automobiles, using as much space as he needed for that purpose. The remainder of the space in the rear was used by O'Neill for storage of part of his goods and for other purposes connected with his business. He kept an automobile there while it was not in use in the business.

In the body of each policy, under the head, "Matters suspending insurance," there was printed a provision as follows: "Unless otherwise provided by agreement indorsed hereon or added hereto, this company shall not be liable for loss or damage occurring while the hazard be materially increasd by any means within the control of the assured; . . . or while there be kept, used or allowed on the described premises (any usage or custom of trade or manufacture to the contrary not-

withstanding) . . . exceeding one quart each of benzine, gasoline, naptha or ether.''

The description of the property insured was contained in a slip attached to the policy. This slip was partly in print and partly written in a blank space left for that purpose. The printed part contained the following warranty:

''In consideration of this permit it is warranted by the assured that no gasoline other than contained in the reservoirs of machines shall be admitted into the building where the machine is permanently or temporarily stabled, if said stable is under the control of assured.''

Preceding this, in the space left for that purpose, there was written into the slip a description of the property insured, and the following statement: ''All while contained in the two-story and basement brick building, and the three-story and basement brick addition thereto attached, occupied as a carriage repository and agricultural implements, dwelling-rooms and auto repair shop.'' The dwelling-rooms were in the upper stories.

The policies are in the form prescribed by the state law. (Stats. 1909, p. 404.) The suspension clause is a part thereof. By its terms, the slip, or rider, as it is called, prevails over the suspension clause, so far as they are inconsistent. The riders were made upon printed forms, each of the same tenor, prepared by the respective companies. By the provisions of section 1651 of the Civil Code the written portions of the rider prevail over the printed parts thereof, and, if the two are repugnant, the written portions must control. Unquestionably, the language of the warranty printed in the rider would allow more than a quart of gasoline to be carried into and kept in the building, provided it was brought there in the reservoir of a machine and was kept in said reservoir while there. The main question, upon the evidence, is whether or not the provision written in the rider allowing the building to be used as an ''auto repair shop'' allows a still further latitude in the use and keeping of gasoline. If it does, it will prevail to that extent, both over the warranty in the rider and over the suspension clause in the body of the policy.

In relation to this question, evidence was given showing the manner in which the fire which caused the loss was started and the necessity for the use of gasoline in an auto repair

shop. An automobile with a leaking gasoline reservoir was brought into the shop by the owner, one Warlow, for the purpose of having the leak repaired. It then contained nearly twenty gallons of gasoline. Haupt emptied this into four five-gallon cans, placed on the floor of the building. He then repaired the leak and was in the act of pouring gasoline from one of the cans into the repaired reservoir to see if the leak was closed, when the gasoline ignited and started the fire that caused the loss. There was also evidence to the effect that it was necessary and customary to keep gasoline in automobile repair shops for use in cleaning parts of the machines, that more than a gallon a day would sometimes be required for that purpose, and that it was used in pans or open cans. Haupt had in the shop a fifty-gallon tank in which he sometimes had as much as twenty gallons of gasoline to be ready for such use when required.

Upon this proof the plaintiff contends that, as the statement in the rider attached to the policies declares that the premises were to be occupied as an "auto repair shop," it must be presumed that the company undertook to insure against all risks incident to the conduct of that business when carried on in the usual manner. We think the contention is sound. Of the many cases cited in support of the proposition, *Yoch* v. *Home M. Ins. Co.*, 111 Cal. 503, [34 L. R. A. 857, 44 Pac. 189], is typical and substantially parallel to the case at bar. The policy there involved contained a printed clause declaring that the policy should be void if gasoline was kept on the premises, "any usage or custom of trade to the contrary notwithstanding." The property insured was a frame building and a stock of merchandise therein, which the policy described as "such as is usually kept in country stores," the description being written in the printed form. Gasoline was kept in the building as a part of the stock in trade at the time it was burned. Proof was made that gasoline was usually kept for sale in country stores. The court held that upon this proof it must be presumed that the company intended to insure the gasoline so kept in stock and that it was not a violation of the policy to keep it in the building as an article of merchandise. In the case at bar, the rider provided that the building was to be used as an "auto repair shop." It follows that the company must be presumed to have intended to insure the

property against all ordinary risks attending an auto repair shop carried on in the customary manner. It required no proof to show that when the reservoir of a machine leaked and was brought into the shop for repair while the reservoir was full, it would be necessary first to empty it of gasoline, and that a good workman, after making the repairs, would put in some gasoline to test it. It would also be necessary, in the usual course of business, to replace the gasoline in the reservoir after the leak was repaired. The company must be presumed to have intended that these usual and necessary operations of the business should be allowed. Therefore, such use of gasoline did not violate the policies.

It further appears that at the time of the fire there were five other automobiles in the rear portion of the building, one belonging to O'Neill, the assured, each of which contained more than one quart of gasoline in its reservoir. This, it is claimed, was forbidden by the policy. We think that this claim cannot be maintained, in view of the provisions of the warranty clause inserted in the rider. It forbids the admission into the building of any gasoline other than that contained in the tanks of machines "permanently or temporarily stabled" therein. It is no part of the business of an automobile repair shop to permanently stable automobiles in the building in which it is carried on, or to stable any automobile temporarily therein, except such as are brought there to be repaired. As the warranty was drawn by the company, it is to be construed most favorably for the assured. (Civ. Code, sec. 1654.) Provisions in an insurance policy are always construed so as to prevent a forfeiture, if the language will reasonably permit such a construction. (*Arnold* v. *American Ins. Co.*, 148 Cal. 666, [25 L. R. A. (N. S.) 6, 84 Pac. 182].) Therefore, as the language of the warranty plainly implies that automobiles with gasoline in their tanks were to be stabled in the building, although not brought in for repair, it must be construed to permit such storage. The word "machines" is in the plural and the number of machines allowed to be kept therein is therefore not limited. The presence of these automobiles in the building did not suspend the policy.

It was shown that at divers times prior to the fire considerable quantities of gasoline had been kept in the building in addition to that in tanks of machines and that kept for use in

repair work. The evidence, however, showed that there was none of it in the building when the fire occurred. The policy does not say that it shall become void if a forbidden quantity of gasoline for other uses should be allowed in the building, but only that it would be suspended while such forbidden gasoline is present. The numerous cases cited by appellant involving policies which declare that such a breach shall make the policy void and holding that it will have that effect, although the forbidden material is not kept in the building at the very time of the fire, are inapplicable here. As soon as the gasoline was removed from the building the policy, which had been suspended during its presence there, immediately became effective and the company became liable for all losses occurring after such removal.

The answers of the defendants averred that it was the intention of the parties to attach to the policies a rider of a different form containing a different warranty clause, that the riders actually placed on these policies were attached by the mutual mistake of the parties and they asked that the policies be reformed accordingly. The warranty contained in the rider form which it is alleged should have been used did not permit the keeping of more than one automobile in the building. It also provided that the reservoir of such machine should not be filled in the building and that no other gasoline should be allowed therein. The issues made by these answers were submitted to the court for trial and findings were made thereon against the appellants. They claim that these findings are contrary to the evidence. We think the claim is unfounded. Shepard & Teague were the agents at Fresno of both companies and were authorized by them, respectively, to execute policies of insurance. O'Neill applied to them for insurance upon the property in question, informing them that he wanted the policies to cover the business of an automobile repair shop. This was in the year 1907, some two years before the issuance of the policies sued on. Upon this request policies were issued to him by these two companies. The riders attached thereto were in the same form and contained the same warranty clause as those attached to the policies in suit. In 1907 this was the form of warranty in use by the companies for policies upon such repair shops. In July, 1909, the companies changed the rule and directed their agents to there-

after use the warranty clause set forth in the aforesaid answers for all insurance issued upon automobile repair shops.    Afterward, in the fall of 1909, when the previous policies expired, the policies in suit were issued in renewal thereof.    The old form of rider was attached thereto by Shepard & Teague, as agents of the respective companies.    O'Neill received these policies and paid the premiums thereon.    He was not informed of the change in form of the warranty or of any mistake in attaching the rider, and he had no knowledge of any claim to that effect until after the fire occurred.    Clearly there was no mutual mistake.    Shepard & Teague were authorized to issue policies for the respective companies and he had a right to assume that these riders were authorized by the companies.    In issuing these policies they did not become agents of O'Neill to prepare the forms thereof.    In that respect they were the agents of the companies alone, and their mistake, or that of their clerk, was not imputable to O'Neill. Furthermore, after accepting the premiums, necessarily with knowledge of the contents of the rider since the companies kept a duplicate copy thereof, and after allowing O'Neill to remain in the belief that he was insured as the policies provided until the fire took place, without informing him of the mistake, it is too late for them to set up a claim for reformation.    In addition to this, the proof showed, although such proof was scarcely necessary, that in the carrying on of an automobile repair shop there would be many occasions when it would be necessary to have two or more machines in the place at once.    Upon this the court was justified in finding that there was in fact no mistake, mutual or otherwise.

Appellants also claim that the plaintiff failed to prove that the building at the time of the fire was occupied in the manner specified in the policies and upon this failure a motion for a nonsuit was predicated which, it is contended, the court erroneously overruled.    The occupancy as specified in the policies was alleged in the complaints and was not denied in the answers.    The fact was admitted by the pleadings.    The allegation in the answers that the premises were also occupied for other and forbidden purposes was affirmative matter by way of defense, the burden of proving which was upon the defendants.    These allegations did not destroy the admission as to the occupancy of the building.

These propositions cover all the errors assigned. It is unnecessary to consider in detail the alleged errors in giving and refusing instructions. The contentions relating to them are all based on propositions which, in the foregoing discussion, we have held to be untenable.

The judgment and order appealed from in each of the above entitled cases are affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.