[Civ. No. 1992.    Third Appellate District.—October 31, 1919.]

## MINNIE B. FARIS, as Administratrix, etc., Respondent, v. AMERICAN NATIONAL ASSURANCE COMPANY (a Corporation), Appellant.

[1] LIFE INSURANCE — CONFLICTING PROVISIONS — CONSTRUCTION OF POLICY.—Conflicting provisions in a contract of life insurance are to be strictly construed against the insurance company and in favor of the insured.

[2] ID.—CONFLICTING PROVISIONS AS TO EARNED PREMIUM—COLLECTION OF NOTE AFTER MATURITY—WAIVER OF FORFEITURE.—Where a note payable sixty days after date given for the first annual premium of a life insurance policy provides that if the note is not paid at maturity, the policy and all rights secured thereby shall terminate and said policy shall become null and void, but the full amount of the premium on said policy shall be considered as the earned premium thereon, while said policy is in force, and the application for the policy provides that such part of the premium as may have been paid in cash shall be retained by the company as earned premium for the term ending with the maturity of the note—and there is paid in cash $28.03, whereas the full amount of the premium is $84.09—the two provisions are hopelessly in conflict, and if the note is not paid at maturity, the collection of the note thereafter by the insurance company waives the forfeiture.

[3] ID.—FORFEITURE CLAUSE—RIGHT OF WAIVER.—A forfeiture provision of a contract which is solely for the benefit of the insurer may be waived by the company if it chooses to do so.

[4] ID.—RECOGNITION OF CONTINUED VALIDITY OF POLICY—WAIVER OF FORFEITURE PROVISION.—A provision in a life insurance policy that the insurance shall *ipso facto* cease and determine upon the default of the insured is waived if the insurance company, after knowledge of default, enters into negotiations or transactions with the assured which recognize the continued validity of the policy, and treats it as still in force.

[5] ID.—ACTION ON POLICY—EVIDENCE.—In this action to recover the amount of a life insurance policy, the correspondence between the insurance company and the insured, with reference to the payment of a past-due promissory note given for the first annual premium, was intended and amounted to the recognition by the insurance company of the continued force and effect of the policy, and an

1. Rule that doubtful terms in insurance policy must be construed favorably to insured as applied to standard policy, note, **Ann. Cas.** 1913E, 287.

express waiver on the part of the insurance company of its right to treat the policy as null and void on the insured's failure to pay the premium note when it fell due as provided therein.

APPEAL from a judgment of the Superior Court of Nevada County. George L. Jones, Judge. Affirmed.

The facts are stated in the opinion of the court.

Oscar Lawler and Nilon & Nilon for Appellant.

Hennessy & Peterson, John T. Hennessy and Fred C. Peterson for Respondent.

BURNETT, J.—The action was brought to recover the sum of three thousand dollars, the amount of an insurance policy issued on the life of said John B. Faris. There is no controversy about the facts, most of them being covered by an agreed statement and the others are contained in the deposition of one witness. On July 27, 1916, Faris made application to the company for insurance on his life for the sum of three thousand dollars. Said application contained, among others, the following stipulation: " (3) That if for the first premium of the policy hereby applied for, or for any part thereof, any note shall be given to said company or to any agent thereof, then, if and when said note is not paid at its maturity, the insurance granted by such policy shall *ipso facto* cease and determine, notwithstanding any provision in the policy to the contrary, and that such part of said premium as may have been paid in cash shall be retained by the company as earned premium for the term ending with the maturity of such note.'' On July 28th following, the first premium, amounting to $84.09, was paid in the following manner: $28.03 in cash and Faris' promissory note for the balance in the following form:

"$56.06.                    Grass, Valley, Cal., 7/28/1916.

"Sixty days after date (without grace), for value received, I promise to pay to the American National Assurance Company $56.06 with interest at 6% per annum until paid.

"This note is given in part payment of the first annual premium on policy No. 4965, issued to me by said company. If this note is not paid at maturity, said policy and all rights

secured thereby shall terminate and said policy shall become null and void, but the full amount of the premium on said policy shall be considered as the earned premium thereon, while said policy is in force and this note shall be payable without reviving said policy.

"(Signed) DR. JOHN B. FARIS.

"Grass Valley, Cal."

On August 1, 1916, the defendant issued and delivered to Faris its policy No. 4695. The provisions therein material to this controversy are as follows:

"This policy and the application theretofore made constitute the entire contract between the parties hereto. . . .

"All premiums are payable either at the home office of the company or to such agent as shall be designated by the company upon delivery of a receipt signed by the president, vice-president or secretary and countersigned by the agent designated. If any premium or installment thereof is not paid when due this policy shall be *ipso facto* null and void and all premiums forfeited to the company except as herein otherwise provided.

"This policy may be reinstated in the event of default of premium payments, unless the cash surrender value has been paid, at any time upon presentation at the home office of evidence of insurability satisfactory to the company and payment of all past due premiums. . . .

"This insurance is granted in consideration of the application therefor, a copy of which is hereto attached and made a part of this contract and of the payment in advance of $84.09, being the premium to provide the legal reserve and for term insurance for the first policy year ending on the first day of August, 1917.

"The first year's insurance under this policy is term insurance.

"This contract will be continued as a limited payment life policy upon payment of the annual renewal premium of $84.09 on or before the first day of August, 1917.

"The American National Assurance Company . . . agrees to pay $3,000.00 . . . to the beneficiary upon receipt of due proof of the death of the assured during the continuance of this policy.

"Only the president, vice-president or secretary has power on behalf of the company (and then only in writing) to

make or modify this or any other contract of insurance or to extend the time for paying any premium and the company shall not be bound by any promise or representation hereafter given by any agent or person other than the above.''

At a date not shown by the evidence, but prior to its maturity, the defendant company notified Faris by mail of the date of the note and requested remittance.   In reply, Faris from Grass Valley, California, wrote the company at St. Louis, Missouri, under date of September 28, 1916, that he was unable to pay the note, and he suggested returning the policy and a reduction thereof from three thousand dollars to one thousand dollars, and offered to pay the interest ''for the time note has run.''   This letter was answered by Assistant Secretary Redmond, of the company, in which he stated among other things: ''We are advising Mr. Larrabee of your desire to reduce the policy and instructing him to take the matter up with you.''   On October 7th following, Larrabee wrote Mr. Redmond and also to Mr. Faris.   The letter to Redmond was as follows:

''Your favor of October 3d re policy No. 46.95, Dr. J. B. Faris, of Grass Valley, asking that the policy be reduced from $3,000 to $1,000 is received.

''I am not at all in favor of any such arrangement as this, and I am enclosing you a copy of the letter that I am today writing the Doctor.   I am quite familiar with the Doctor's circumstances, and he is entirely able to pay any obligation of this kind, I am quite certain.   Furthermore, we cannot adopt such a policy, or establish any such a precedent as to allow people to keep their policies two or three months, and then at will, to decide that they do not want them, or desire to cut them down to suit themselves.

''If I had to cut this policy down in the end, well and good, but I shall not do so until I have adopted the procedure outlined in my letter of which I am enclosing you a copy.''

Said Larrabee, the general agent of the company at Los Angeles, California, writing on behalf of defendant corporation on October 7, 1916, sent a letter to Faris, in which he acknowledged receipt of said letter of September 28th and containing the following instructions: ''It is out of the question to have the policy reduced after the premium has once

been paid or within 30 days thereafter. . . . Therefore, no change can be made. Therefore, doctor, it will be necessary for you to pay the balance due on your premium and reduce it next year if you choose. If you are not in a position to pay your note at the present time, I am authorized to enclose you a new note, which length of time is not stated therein and you can fill in such time as you desire, but no longer than 60 days." On October 9th, following, Faris replied to Larrabee's letter of October 7th, saying, in effect, that he did not have the $59.65, or any part of it, and three thousand dollars was all the insurance he could possibly carry. In explanation of this latter statement it may be said that Faris was at the time carrying a policy for two thousand dollars with another company. On October 11th Larrabee wrote to Faris a letter as follows:

"Your letter of October 9th is duly received, and contents I have carefully noted. My previous letter to you holds good. This policy cannot be reduced until the beginning of the second year, and I shall expect you to pay the amount of your note. As I told you before, if you are not able to pay it now pay some part of it, and I will extend the balance. You say in your letter 'you ought to know your business best.' I quite agree with you and you should have known what you were doing when you gave your note promising to pay this amount of money, and there is no argument necessary whatever. We simply shall expect you to pay the balance due on your premium. You are therefore requested to sign the note that I sent to you in my previous letter and pay whatever you can. This is the best proposition that it is possible for you to be offered.

"Very sincerely yours."

To this letter Faris made no reply. In connection with these letters it may be observed that certain instructions were sent by Assistant Secretary Redmond to Larrabee after the former received Faris' letter, but the record does not disclose what those instructions were. In regard to those instructions the record shows: "It was stipulated and agreed in open court that plaintiff had made, prior to the trial of the cause, a proper demand upon defendant for production of the written instructions under date of October 3, 1916, written by the home office of the defendant corporation to George Larrabee, agent of said corporation, at the city of

Los Angeles, California; that defendant was unable to produce such written instructions as requested and did not produce the same at the trial.'' On November 8, 1916, nothing further having been done, Larrabee sent the unpaid note to the Nevada County Bank for collection, and on November 20, 1916, the bank collected the same. The transaction between the bank and Faris consisted merely in the receipt by the bank of the money and the delivery of the note to the maker thereof duly canceled. Faris died December 23, 1916; plaintiff was duly appointed administratrix of his estate, and in that capacity made proofs of death to defendant and demanded payment of the policy. Defendant declined to pay and, hence, the action. The superior court found:

(2) ''That that certain policy of insurance, a copy of which is annexed to the complaint on file therein and marked Exhibit 'A' thereof, did not cease or determine on or about the twenty-sixth day of September, 1916, or at any other time or at all. That defendant waived any or all rights that existed or might have existed on the twenty-sixth day of September, 1916, or at any other date, to determine said . policy or contract of life insurance.

(3) ''That said policy or contract of life insurance was a valid and subsisting contract of insurance, and was in full force and effect to and including and on the twenty-third day of December, 1916.''

Judgment was accordingly rendered for plaintiff in the amount stated, and the appeal is from said judgment.

Preliminarily, it is taken for granted that said Redmond and Larrabee were fully authorized to represent the Assurance Company in the correspondence and negotiation had with said Faris. This point is fully covered either by stipulation or the uncontroverted evidence in the case. In fact, it is not disputed by appellant in its closing brief, and, therefore, we shall give that proposition no further consideration.

Again, it is assumed, because well settled by the authorities that: (a) ''The policy (including application) and note given for the first premium thereon together constitute the contract.

(b) ''The parties to an insurance contract may incorporate therein whatever conditions they please, provided the same be not in contravention of law or public policy.''

Keeping these considerations in view, it is apparent that we are called upon to determine the effect of an ambiguity created by the terms of the application and of the note. Under the provisions of the former it appears that such part of the premium as may have been paid in cash *"shall be retained by the company as earned premium for the term ending with maturity of such note."* The amount so paid in cash, as we have seen, was $28.03. The effect of said provision was, therefore, that the earned premium for the term of sixty days should be $28.03. But the note provided that *"The full amount of the premium on said policy shall be considered as the earned premium thereon while said policy is in force."* This full amount is, as we have seen, $84.09. We have, therefore, this situation: In one part of the contract between the parties it is clearly provided that $28.03, and in another part of the contract that $84.09, shall be the earned premium for the said term of sixty days. Of course, it is true, as contended by appellant, that the whole contract of the parties should be considered and its various terms should be reconciled, if possible. But these two provisions are hopelessly in conflict. A certain amount is stated in the application as constituting the earned premium. This necessarily implies that no additional sum is included therein. The note, however, mentions a larger sum as the earned premium. The case would be no different if the consideration for a contract were stated in one portion thereof to be a certain sum and in another portion to be an entirely different sum. For instance, if, in a contract between A and B for the sale of horses, it was recited in one part thereof that the price was $28 and in another that it was $84, could effect be given to both recitals?

[1] The court below, therefore, was called upon to determine the effect upon the rights of the assured of these two conflicting provisions, and in doing so it was guided by the well-settled rule as declared in many decisions of the supreme court of this state and of other courts in various jurisdictions. As to this it may be said that the rule in relation to accident, fire, marine, and life insurance is the same. In a fire insurance case it was said: "It is well established that conditions which would provide for a forfeiture of the interest of the assured or other persons claiming under the policy are to be strictly construed against the insurance com-

pany, and if there is any ambiguity in a policy which may reasonably be solved by either one of two constructions, that interpretation shall be adopted which is most favorable to the assured." (*Welch* v. *British American Ins. Co.*, 148 Cal. 223, [113 Am. St. Rep. 223, 7 Ann. Cas. 396, 82 Pac. 964].)

In a life insurance case the supreme court said: "If this be so, no further argument is needed to establish the conclusion, that under the settled rule that policies of insurance are to be construed against the insurer. . . . " (*Anderson* v. *Mutual Life Ins. Co. of New York*, 164 Cal. 712, [Ann. Cas. 1914B, 903, 130 Pac. 726].)

In the case of *Williamsburg* v. *Williard*, 164 Fed. 303, [90 C. C. A. 392, 21 L. R. A. (N. S.) 103], the United States circuit court of appeals for the ninth circuit, in a California case, referred to the rule as a maxim as follows: "Applying the maxim that in construing the terms of an insurance policy, if there be any ambiguity, it must be construed most strongly against the insurers since the language is their own. . . . " Other decisions to the same effect are *Berliner* v. *Travelers' Ins. Co.*, 121 Cal. 458, [66 Am. St. Rep. 49, 41 L. R. A. 467, 53 Pac. 918]; *Mackintosh* v. *Agricultural Ins. Co.*, 150 Cal. 440, [119 Am. St. Rep. 234, 89 Pac. 102]; *Goorberg* v. *Western Assur. Co.*, 150 Cal. 510, [119 Am. St. Rep. 246, 11 Ann. Cas. 801, 10 L. R. A. (N. S.) 876, 89 Pac. 130]; *O'Neil* v. *Caledonian Ins. Co.*, 166 Cal. 310, [135 Pac. 1121]; *Victoria S. S. Co.* v. *Western Assur. Co.*, 167 Cal. 348, [139 Pac. 807].

[2] Construing said conflicting provisions in favor of the insured, we must conclude that the collection of the note by the Insurance Company was a waiver of the alleged forfeiture. This position is supported by numerous authorities, among which we may quote from *Cohen* v. *Continental Co.*, 67 Tex. 325, [60 Am. Rep. 24, 3 S. W. 296], as follows: "It may . . . be considered as settled law that when a policy provides for a forfeiture upon failure to pay premiums which are to fall due, but does not stipulate that upon such failure the overdue premiums shall be considered as earned, a demand and payment of such premium constitutes a waiver of the forfeiture. (*Joliffe* v. *Madison Mutual Ins. Co.*, 39 Wis. 111, [20 Am. Rep. 35].)" As we are required to view the case, it appears, therefore, that the Insurance Company

agreed that the earned premium for the said period of sixty days should be only $28, and after the expiration of said period it collected the additional sum of $56 covered by said note. In other words, it claimed and received the benefit of the payment of the premium for the entire period of one year but sought to limit its responsibility to the said period of sixty days. Under the authorities and according to the plain principles of equity this it cannot do.

[3] Again, the forfeiture provision of the contract was solely for the benefit of the insurer and as such could be waived by the company if it chose to do so. [4] It is true that the policy provided that the insurance should *ipso facto* cease and determine upon the default of the insured, but, nevertheless, by the decisions of the supreme court of this state it has been held that, under similar provisions, if the Insurance Company, after knowledge of said default, enters into negotiations or transactions with the assured which recognize the continued validity of the policy, and treats it as still in force, the right to claim a forfeiture for such previous default is waived. (*Murray* v. *Home Benefit Life Assn.*, 90 Cal. 402, [25 Am. St. Rep. 133, 27 Pac. 309].)

In *Knarston* v. *Manhattan Ins. Co.*, 140 Cal. 62, [73 Pac. 740], the court decided that a waiver of forfeiture could be proven by parol. In the decision of the question, referring to the provision in the policy that upon a failure to make payment at the given dates the policy will be void, the court said: "This latter provision, however, is one common to insurance policies, and is solely in favor of the company, and being so in its favor may be waived." It is further stated that the contract continues in force by the election of the company not to avail itself of the reserved right of forfeiture, and that the policy is similar to a lease or vendor's contract with condition of forfeiture contained therein in reference to which it has been invariably held that the right to declare a forfeiture, being a matter entirely for the benefit of the lessor or vendor can be, even by parol, effectually waived by either. Among other decisions holding that such provision in a policy means only that the policy shall be voidable at the option of the company, we may cite *Noem* v. *Equitable Life Ins. Co.*, 37 S. D. 176, [157 N. W. 308]; *Smith* v. *St. Paul F. & M. Ins. Co.*, 3 Dak. 80, [13 N. W. 355]; *Grigsby* v. *Russell*, 222 U. S. 149, [Ann. Cas. 1913B,

863, 36 L. R. A. (N. S.) 642, 56 L. Ed. 133, 32 Sup. Ct. Rep.
58, see, also, Rose's U. S. Notes]. In other words, it seems
to be well settled that a policy containing a forfeiture clause
like the one in this case is not rendered ineffectual and in-
operative by the mere default of the insured in payment of
the premium unless the insurer desires to so treat and con-
sider the policy, but if the insurer elects to recognize the
policy as existing and in force subsequent to the date of the
breach, then the policy continues as an existing and opera-
tive insurance for the benefit of the insured.

[5] Applying the foregoing principle to the facts of this
case there can be no doubt that the correspondence between
the parties, which we have hereinbefore set out, was so in-
tended and amounted to the recognition by the Insurance
Company of the continued force and effect of said policy,
and that it cannot be properly said, as contended by appel-
lant, that said correspondence amounted to mere suggestions
which were neither accepted nor acted upon. In other ·
words, it seems plain, we think, that under a fair con-
struction of said correspondence and negotiation there was
an express waiver on the part of insurer of its right to de-
clare the policy null and void on account of the insured's
failure to pay the premium note on the 26th of September,
1916. The case falls clearly within the doctrine of *Murray*
v. *Home Benefit Life Assn., supra.* The policy therein con-
tained a forfeiture provision in the event that the insured
should neglect or omit to pay the last assessment that might
be levied on the certificate within thirty days from the date
of notice thereof. On September 1, 1886, the assessments
which had fallen due on June 1st and August 1st of that
year were still unpaid, and the defendant on that day ad-
dressed a note to said Murray, calling his attention thereto,
with a request that he remit the amount due. At or about
the same day it also addressed to him this letter: ''Accord-
ing to the conditions of your certificate of membership, No.
8361, an assessment amounting to $29.40 will be due and
payable at this office on the 1st of October, 1886. Remit-
tances should always be made payable to Home Benefit As-
sociation, San Francisco, California.''

On September 22d the insured sent a third person to the
office of the company with the amount of the delinquent pay-
ment. The president of the company would not accept the

payment but stated he "would be only too happy to do so" when insured should come and tender it himself. The insured died on September 30, 1886, without having paid the premium. The sole question was whether there was a waiver of the forfeiture on the part of the insurance company. In discussing the question the court declared that the failure of the deceased to pay the assessment of June and August would have released the company from all further liability *if the defendant company had so elected.* After stating the general rule as to waiver, which we have before set out, the court proceeds: "The respondent, while not disputing the general rule that a forfeiture may be waived at the option of the person entitled to enforce it, insists that the letters of the defendant, above referred to, show only an offer by it to waive the previous default in the payment of the June and August assessments upon condition that such past due assessments were immediately paid, and while the insured continued in the same state of health." After stating that there were no such conditions in the letter and that a tender within a reasonable time with the amount due would have been sufficient to continue the policy in force, the court further said: "But the letter notifying the insured that an assessment would be due and payable on October 1st, and in substance requesting payment, of itself constituted a waiver of the previous default, and must be construed as an unconditional offer to accept payment of that assessment on or before the date named. It was, in effect, an assertion that the certificate was still in force, and, notwithstanding previous defaults known to the defendant, would remain in force until the date therein named for such payment." The point is also covered by the two decisions of the supreme court in *Knarston* v. *Manhattan Life Ins. Co.,* 124 Cal. 74, [56 Pac. 773], and 140 Cal. 57, [73 Pac. 740]. Therein is quoted with approval the following statement of the rule in *Titus* v. *Glenn Falls Ins. Co.,* 81 N. Y. 419: "But it may be asserted broadly that if in any negotiations or transactions with the assured after knowledge of the forfeiture it recognized the continued validity of the policy, or does acts based thereon, or required the insured, by virtue thereof, to do some act or incur some trouble or expense, the forfeiture, as a matter of law, is waived; and it is now settled in this court after some differences of opin-

ion that such a waiver need not be based upon any new agreement or an estoppel.'' In the second decision in the Knarston case the supreme court reiterates and reaffirms the rule: ''When an insurance company, with full knowledge of all the facts enters into negotiations with the assured, recognizing the continued validity of the policy, the right to forfeiture of the previous default, which may be asserted,' is waived,'' and in confirmation of said doctrine many cases from other jurisdictions are cited therein.

In the Noem case, *supra,* there was a default on the part of the insured and thereafter the company wrote him as follows: ''We note that the premium due June 18, 1913, on your policy in our company No. 72,972 is still unpaid, and we write to remind you of the matter as we are inclined to think you have simply overlooked this. The contract has many liberal features and we are sure you do not wish to forfeit the protection it affords. . . . Kindly complete this health certificate and return to us with a remittance for the amount of the premium.'' The health certificate was not furnished and the court held the insurer liable on the policy by reason of the fact that said letter indicated an intention on the part of the company to treat the contract as in force, and, therefore, it amounted to a waiver of the default.

It is quite plain from the correspondence herein that the Insurance Company continued to recognize the existence of said policy after said default of September 26th. For instance, on October 3d, six days after the insured was in default, in a letter to him, the assistant secretary of the company, acknowledging the receipt of insured's letter of the 28th of September, stated: ''We are advising Mr. Larrabee of your desire to reduce the policy and instructing him to take the matter up with you at once.'' The letter contained no statement that the policy was forfeited nor did it intimate in the slightest degree that the company regarded it as having lapsed. On the contrary, it clearly implied that the company recognized it as still in force and would consider the insured's proposal for a change in the policy. Again, on October 7th, eleven days after the default, Mr. Larrabee, the general agent of the company, virtually admitted that the policy was still in force by stating to the insured that ''it would be necessary for you to pay the balance due on your premium and reduce it next year, if you choose.''

There could scarcely be any more emphatic recognition of the continued existence of the policy and of the intention and purpose of the company to give the insured a further opportunity to pay the premium or to enter into a new contract for the modification of said policy than is found in the language of these letters. It may be said that this conclusion is further strengthened by the said letter of October 11th, in which the insured was told that he could pay some part of the premium and that the balance would be extended, and also that the policy could not be reduced until the "beginning of the second year." This language implies that the insured would have the privilege of reducing the policy at the end of the first year. This, of course, is entirely inconsistent with the theory that the policy had become null and void by reason of the default of the insured. We deem it unnecessary to cite further authorities upon the question herein presented. We think that the position taken by respondent is in accordance with law and the facts of the case. This conclusion may be based upon any or all of the propositions stated substantially in the language of respondent as follows: First, under a proper construction of the contract, giving due regard to the earned premium provisions of said application, the collection of the note by the insurer was a waiver of the alleged forfeiture, if such forfeiture had ever existed. Second, the policy did not lapse and the company's liability thereunder did not end because of nonpayment at maturity of the note dated July 28, 1916, and due September 26, 1916, but, on the contrary, the condition in the policy that it should be void if the premium note was not paid when due meant only that it should be voidable at the option of the company; that the company waived the forfeiture and by accepting the balance of the premium treated the contract as subsisting after the breach. Third, the said correspondence constituted a waiver on the part of the insurer of any right that theretofore may have existed to forfeit the policy.

We think the judgment is just and in accordance with the requirement of the law and the contract of the parties, and it is, therefore, affirmed.

Ellison, P. J., *pro tem.,* and Hart, J., concurred.