[Civ. No. 3144.  First Appellate District, Division Two.—December 3, 1919.]

A. E. CRONENWETT et al., Respondents, v. IOWA UNDERWRITERS OF THE DUBUQUE FIRE & MARINE INSURANCE COMPANY (a Corporation), et al., Appellants.

[1] FIRE INSURANCE—ACTION ON POLICY—CONFLICTING TESTIMONY— FINDINGS—APPEAL.—In an action upon fire insurance policies claimed by the defendants to have been canceled by written notices sent to the assured or to his agent, where the record contains testimony from which opposite conclusions may logically be deduced, the findings of the jury are not open to review on appeal.

[2] ID.—CHANGE IN NOMENCLATURE AND MANAGEMENT OF LESSEE OF PREMISES—TITLE TO AND POSSESSION OF PROPERTY NOT CHANGED.— A provision in a policy of fire insurance that the company shall not be liable while the interest in, title to, or possession of the subject of insurance is changed, excepting a change of occupancy of the building without material increase of hazard, is not violated by a mere change after the issuance of the policy in the nomenclature and management of the club, which was occupying the premises under lease at the time the policy was issued.

[3] ID.—NEW LEASE TO NEW MANAGER—TITLE, INTEREST, AND POSSESSION OF PROPERTY NOT CHANGED.—Where the insured property at the time of the issuance of the policy was under lease to the manager of an automobile country club and occupied by such club at the time as a club-house, and such tenancy was known to the insurance companies and acquiesced in by them, the subsequent leasing of the property to a new manager at the time the club changed its name did not constitute a change in title, interest, and legal possession of the property within the meaning of the policy.

[4] ID.—CONSTRUCTION OF INSURANCE POLICIES—PREVENTION OF FORFEITURES.—Provisions in an insurance policy are always construed so as to prevent a forfeiture, if the provisions will reasonably admit of such a construction.

[5] ID.—AGENCY—CANCELLATION OF POLICY.—The fact that an agent is employed to place insurance does not make him an agent to cancel the policy on behalf of the owner of the property.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. W. Hindman for Appellants.

Charles Coan and Harold C. Morton for Respondents.

LANGDON, P. J.—This is an appeal from a judgment for the plaintiff, A. E. Cronenwett, in an action upon two fire insurance policies issued by the appellants. Cronenwett was the owner of the real property covered by said policies, and Louise Guenther, the other party plaintiff, was the owner of the mortgage upon said property. It was stipulated by the parties in open court that the said mortgagee had duly received notice of cancellation of said insurance policies, and judgment was entered against said mortgagee accordingly. We consider the case, therefore, merely with reference to the rights of the plaintiff Cronenwett. The fire occurred in May, 1916. The answers of the defendants set up as a separate defense that during the year 1915 the defendants gave written notices to Cronenwett that said policies would be canceled within five days from the respective dates of the notices, and that said notices were duly received by the plaintiff. As a second defense the defendants allege that by the terms and conditions of the policies sued upon it is provided, among other things, that "unless otherwise provided by agreement, indorsed hereon or added hereto, this company shall not be liable for loss or damages occurring . . . while the interest in, title to, or possession of the subject of insurance is changed, excepting . . . a change of occupancy of building without material increase of hazard. . . . " It is then alleged that after said policies had been issued, the property covered by them was leased to one Daniel W. Markin for a term of three years and that Markin was let into possession under said lease, and that no written permission for such action was indorsed upon the policy. It is also alleged that the hazard of the defendants was materially increased without their consent by reason of the fact that the lessee of the property kept upon the premises four hundred gallons of distillate, a highly inflammable liquid. This last defense was not relied upon at the trial, and is not urged upon appeal.

[1] The first contention of appellants may be briefly disposed of. It is, that the proof shows that the policies in question were canceled by written notices sent to the assured

or to his agent.   In support of this position, appellants urge
upon our attention certain testimony in the record sustain-
ing this view.   However, the record contains testimony from
which opposite conclusions may logically be deduced.   Find-
ings were waived by the parties hereto, and it was agreed
that the court should submit to the jury certain questions of
fact.   These questions related to the cancellation of the pol-
icies, receipt by plaintiff of the notices of cancellation
alleged to have been sent, and the agency of one Kaminsky
to represent Cronenwett for the purpose of receiving said
notices of cancellation.   The jury answered all of these
questions in the negative—and against the contentions of the
·defendants.   Such matters are, therefore, not open for re-
view here, and we start from these findings of the jury as
from established facts.

[2]   Another objection of the appellants is that certain
conditions of the policies were broken because of the fact
that there was a change in the occupancy of the building
after the policy was issued.   With regard to this contention
we shall state the facts in support of the judgment which
fairly appear from the evidence.   At the time the insurance
was taken out upon the property it was occupied by a cor-
poration known as the "Automobile Country Club," and
was under lease to the manager of that club, Rowl King.
Later, the name of the club was changed to Monrovia
Country Club.   The membership in the new organization
remained practically the same as in the old; the purposes
of the two organizations were identical.   A new manager
was placed in charge of the new club and the lease was ex-
ecuted to him by the owner and the former lease canceled.
The transaction was, in effect, nothing more than a change
of name and the substitution of a new manager.   A change
of managers might have occurred with or without a change
of name, and certainly it will not be contended that the club
could not change managers without avoiding the insurance
policies upon the premises occupied by it.   Also, even though
the name had not been changed, the directors and other offi-
cers of the club were subject to change without in any way
changing the real occupancy of the premises.   There is no
evidence that this change in name and management in any
way increased the hazard of the defendants.   The language
of the policies upon this point is that the company "shall

not be liable while the interest in, title to, or possession of the subject of insurance is changed, excepting . . . a change of occupancy of the building without material increase of hazard.'' Under these circumstances, we think the plaintiff was not guilty of a violation of the policy with regard to the occupancy of the premises. The appellants argue that the above condition, with regard to increase of hazard, is modified by riders attached to the policies stating that the building is insured while occupied as a club-house, but with the words ''By Automobile Country Club'' in parentheses following such general statement. It is contended that because of the parenthetical insertion in this rider of the name of a particular club that the occupancy of that particular country club was necessary to keep the policy in force. It may be conceded that in so far as the language of the rider is inconsistent with the suspension clause of the policy, the former will prevail (*O'Neill* v. *Caledonian Ins. Co.*, 166 Cal. 313, [135 Pac. 1121]), but we are not inclined to hold that this provision in the rider was intended to guard against a mere change in nomenclature and management of the country club; and, as stated before, it appears from the evidence, and the trial court has impliedly found, that, in substance, the change amounted merely to a change of name and of the manager.

[3] Appellants next argue that in the provision above quoted possession and occupancy are treated separately, and the conditions with relation to each are distinct; that the use of the term ''occupancy'' was intended to cover temporary use of the building and that the use of the word ''possession'' was intended to designate the possessory right. It is contended that whether or not there was a change of occupancy as hereinbefore discussed, nevertheless the lease given to the manager of the Monrovia Country Club was the granting of such an interest in the property to the lessee as to make him the virtual owner of the property for the period of the lease, and to change the title, interest, and legal possession of the property. While it would seem to us that a lease is not a change in the title or interest of the property within the meaning of the policies (*Smith* v. *Phoenix Ins. Co.*, 91 Cal. 323, 328, 329, [25 Am. St. Rep. 191, 13 L. R. A. 475, 27 Pac. 738]; *Rumsey* v. *Phoenix Ins. Co.*, 1 Fed. 396; *Insurance Co.* v. *Helfenstein*, 40 Pa. 289, [80 Am. Dec. 573];

*Planters' Ins. Co.* v. *Rowland,* 66 Md. 236, 243, [7 Atl. 257]), yet it becomes unnecessary for a determination of this case that we should rest it upon this proposition. For it appears that the property was under lease to the manager of the Automobile Country Club and occupied by said club as a club-house when the policies were issued; and the tenancy of this country club was known to the defendants and acquiesced in by them. Whatever title and interest and possessory right attached to a lessee, attached to said manager of said club, at the time the contract of insurance was entered into. And if the two clubs are so substantially one and the same that the occupancy of the premises was not changed within the meaning of the policies, then, assuredly, the two clubs, represented by their respective managers, were so substantially one that the making of the lease to the manager of the second club instead of to the manager of the first club was not a change in the possession, title, and interest within the meaning of the policy. If the second club was merely a continuation of the first club, then the right, title, and interest of the second club in the premises was merely a continuation of the right, title, and interest of the first club in the property, and that existed at the time the insurance was issued on the building. **[4]** We consider it proper to regard the substance and not the form of the transaction in question here in view of the well-recognized rule that provisions in an insurance policy are always construed so as to prevent a forfeiture, if the provisions will reasonably admit of such a construction. (*O'Neill* v. *Caledonian Ins. Co.,* 166 Cal. 315, [135 Pac. 1121]; *Arnold* v. *American Ins. Co.,* 148 Cal. 666, [25 L. R. A. (N. S.) 6, 84 Pac. 182].)

It is further urged that because there is some testimony in the record to the effect that Kaminsky was the agent of the mortgagee, Louise Guenther, and was authorized by her to cancel and replace insurance at will, that this plaintiff is bound by the scope of the agency between Mrs. Guenther and Kaminsky. This is predicated upon the fact that plaintiff has brought suit upon the policies so taken out by order of Mrs. Guenther through her agent, Kaminsky. But the plaintiff has testified that he did not know of this arrangement between Mrs. Guenther and Kaminsky. **[5]** The fact that an agent is employed to place insurance does not make

him an agent to cancel the policy on behalf of the owner of the property. (*Quong Tue Sing* v. *Anglo-Nevada Assur. Corp.*, 86 Cal. 566, [10 L. R. A. 144, 25 Pac. 58].) The mere fact, then, that the plaintiff accepted the policies of insurance secured by Kaminsky and sued upon them does not bind him by notice of cancellation received by Kaminsky. It cannot be argued that he accepted, with respect to himself, the full scope of the agency asserted by appellant to have existed between Mrs. Guenther and Kaminsky, because the plaintiff has stated that he knew nothing about the scope of such agency. As we have heretofore stated, this question of agency was an issuable fact between the parties, and the jury has found for the plaintiff upon substantial evidence.

The judgment is affirmed.

Nourse, J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 29, 1920.

All the Justices concurred, except Kerrigan, J., *pro tem.*, who was absent.