[L. A. No. 18139. In Bank. Apr. 28, 1942.]

EDNA MAE PAGE, Respondent, v. WASHINGTON MUTUAL LIFE ASSOCIATION (a Corporation) et al., Defendants; PHYSICIANS LIFE INSURANCE COMPANY (a Corporation), Appellant.

John L. Flynn for Appellant.

W. P. Wood and M. W. Young for Insurance Commissioner, as Conservator of Appellant.

Henry P. Wackerbarth and Isador Gralla for Respondent.

CARTER, J.—Defendant and appellant Physicians Life Insurance Company, doing an insurance business under the stipulated premium plan, appeals from a judgment for plaintiff as beneficiary in a life insurance policy; the appeal is on the judgment roll alone. Default judgment was entered against defendant Washington Mutual Life Association, a mutual benefit association doing business on the assessment plan.

On December 15, 1928, the last-mentioned defendant issued a policy of life insurance for $3,000 to and on the life of Frank F. Pratt; his wife, Anna G. Pratt, being named beneficiary. It was provided therein that membership quarterly dues of $3.00 on the 15th day of March, June, September and December were to be paid by the insured. Death assessments also were to be paid. The policy provided that it would be forfeited if the dues and assessments were not paid within fifteen days from the date of mailing of a notice by the insurer requesting payment of the amount specified in the notice. Pursuant to the reserved right in the policy, the beneficiary was changed to plaintiff on November 17, 1936. All of the payments required to be made by insured were paid up to and including the one due on June 15, 1937, for the quarter ending September 15, 1937; all death assessments levied were paid to and including July 31, 1937.

On July 1, 1937, the Washington Mutual Life Association entered into an agreement with appellant whereby the latter received all of the assets of the association and assumed all of its liabilities including insurance policies then in force issued by the former, and reinsured all of said policies subject to the terms and conditions thereof, except that the reinsurance would be governed by an attached assumption rider. Appellant covenanted with the association's insured and the beneficiaries under their policies to carry out the provisions of said policies subject to such assumption rider, and also assumed an obligation in favor of the beneficiaries "with the same effect, as if such claim or claims might or could be en-

forced against said Washington Life, except as such claim or claims may be modified or changed by the terms of the attached Assumption Rider."

The assumption rider provided that its retention by a policy holder or payment of a premium call in August, 1937, shall constitute an acceptance by the policy holder; that the insured agrees to pay a monthly premium, payable on the first of each month, the first being due on August 1, 1937, and the amount being determined by the age of the insured according to a certain schedule, and in addition such assessments as are necessary to maintain a legal reserve; that notice of the stipulated premium due is given and accepted by acceptance of the rider; that twenty days' grace in the payment of premiums is allowed.

An assumption rider was mailed to the insured on or prior to August 1, 1937 (but none was mailed to and no information concerning the same was given to plaintiff, beneficiary). Accompanying the rider was a letter from the appellant welcoming the insured as a new member of appellant and stating that "a Rider issued by this Company is enclosed which, of course, you will preserve and attach to your present certificate. The payment of your premium and subsequent premiums, after this date, will constitute your acceptance of this Rider"; that "Premium notices will be mailed to you direct from the Home Office of the Company, at San Francisco, California." Also enclosed was a statement of the premium reading "This is to remind you that your premium will be due and payable as specified below. Receipt will not be returned unless requested. Your check is a receipt. IMPORTANT: Please return this notice with your remittance. AMOUNT DUE $24.00 PAYABLE Aug. 1, 1937 POLICY NO. 2615 Continues your Policy in force to September 1, 1937. SEND PAYMENT NOW! DO NOT LAY THIS ASIDE—THIS IS IMPORTANT TO YOU AND YOURS." In reply to the foregoing the insured wrote to appellant on August 18, 1937, as follows:

"In regard to W. Mu. Ins. Co. policy we have not been able to determine just how much insurance we will be able to carry as yet. It will depend on how much money we can spare or we may be able to raise which we will not find out about for a few days." On September 16, 1937, plaintiff went to the home of the insured and saw for the first time the statement of premium due which had accompanied the assumption rider of August 1, 1937, and learned of the merger,

but the insured, due to illness, was unable to give plaintiff any information concerning the same. Plaintiff took the statement and attempted to locate the Washington Mutual Life Association in Los Angeles, but its offices were vacant. She then sent a money order for $24 to appellant at San Francisco, air mail and special delivery, enclosed with a letter giving her telephone number and address and stating: "Enclosed please find money order for $24.00 to pay on policy of Frank F. Pratt, no. 2615. I am the beneficiary in this policy and have paid on it many times. We do not understand this change and I do not wish to drop this policy as Mr. Pratt has a paralyzed wife. Please let me know how and when to pay at once." Appellant received the letter and money order on September 16, 1937, and accepted the latter in payment of the August premium. On September 17, 1937, plaintiff sent a money order for $12 to appellant air mail and special delivery accompanied by a letter stating: "Enclosed please find $12.00 which I hope is the correct amount as payment from Sep. 1-37 to Oct. 1-1937 on the policy of F. F. Pratt. On the 16 I mailed $24.00 to pay up to September 1-37. Please advise me if there is a error in this amount." The letter and money order were received by appellant on September 18, 1937. On September 23, 1937, plaintiff learned for the first time that appellant had an office in Los Angeles and that by calling there she could ascertain the correct amount of the premium and upon consulting that office she was informed that the premium was $24 per month. She immediately sent $12 to appellant at San Francisco enclosed with a letter stating: "After making an inquiry in regard to Mr. Pratts Policy No. 2615 Washington Mutual, I find out the payments are $24.00 per month. I inclosed $12.00 to balance on the month of Sep. So far I haven't had a reply from Sep. 16 and 17th, 1937 letters. Would like to know if we are fully paid and covered in case of death." The insured gave her a copy of the assumption rider a few days after September 23, 1937. Her letter of September 23rd was received by appellant on September 24, 1937. The first communication she received from appellant was after September 23, 1937, being a letter of that date stating: "We are in receipt of your remittance of $24.00 to pay August 1st premium on policy 2615 F. F. Pratt, also $12.00 to apply on the September premium.

"Since the premium is $24.00 per month it will be neces-

sary for you to remit an additional $12.00 to complete the payment. The grace period has expired on the above payments, and it will be necessary for Mr. Pratt sign the enclosed application for reinstatement.

"Kindly have the enclosed application signed and return with remittance of $12.00." No notice of cancellation of the policy was given by appellant. The application for reinstatement was never signed. On September 25, 1937, plaintiff advised appellant by mail that the insured could not execute the reinstatement application and requested the return of the $48 she had sent. The money was refunded on September 29, 1937. Plaintiff wired defendant on October 1, 1937, to hold money until further notice, and on the same day returned the money to appellant. The insured died on October 21, 1937, and plaintiff's demand for payment of the policy was refused. Appellant wrote to plaintiff on November 5, 1937, stating that the policy had lapsed because the premium due September 1, 1937, was not paid and returned all sums to plaintiff; the latter's counsel thereafter returned them to appellant. The insured was indebted to plaintiff and the latter had paid the premiums on the insurance policy for four years. On two occasions, once in 1936 and June, 1937, the Washington Mutual Life Association had accepted premium payments after the grace period had expired.

The court found that the policy had not lapsed and that strict performance with respect to time of payment of premiums had been waived. Appellant contends the policy lapsed for failure to pay premiums.

The general principles with relation to forfeiture of the benefits under insurance policies have been recently stated by this court. Forfeitures, particularly in insurance contracts, are not favored. (*Bittinger* v. *New York Life Ins. Co.,* 17 Cal. (2d) 834 [112 P. (2d) 621].) And if reasonably possible in light of the circumstances, the courts will determine that a forfeiture has not occurred or that a waiver or estoppel exists. (*Knarston* v. *Manhattan Life Ins. Co.,* 124 Cal. 74 [56 Pac. 773] ; *Huber* v. *New York Life Ins. Co.,* 18 Cal. App. (2d) 269 [63 P. (2d) 318].)

With those rules in mind we turn to the particular circumstances presented in and the principles applicable to the case at bar. It is clear that a past course of conduct of acceptance by the insurer of payments of premiums after

the grace period may establish a waiver by the insurer of the right to declare a forfeiture for failure to pay premiums exactly at the stipulated time, or the insurer may be said to be estopped to assert the forfeiture where the insured may be said to have been reasonably led to believe that payments made within a reasonable time after the grace period would be acceptable. (*Nelson* v. *National Guaranty Life Co.,* 131 Cal. App. 669 [21 P. (2d) 1022]; *Vinther* v. *Sunset Mut. Life Ins. Co.,* 11 Cal. App. (2d) 118 [53 P. (2d) 182]; *Turner* v. *Redwood Mutual Life Assn.,* 13 Cal. App. (2d) 573 [57 P. (2d) 222].) However, we are not disposed to hold that the acceptance of delinquent premium payments alone was sufficient under the facts of this case to prevent the assertion of a forfeiture, as only two of such payments were accepted by appellant's predecessor, and it is doubtful if such conduct would be binding as a waiver or estoppel against appellant; but there are other significant circumstances present which when combined with the acceptance of late payments establish a situation in which considerations of equity and justice demand that the forfeiture be not enforced. Having in mind the acceptance of late payments of premiums prior to the merger of appellant and Washington Mutual Life Association, we find that after the merger the assumption rider was sent to the insured, and under it the premiums were increased from *$12 per year,* payable quarterly, plus death assessments under the original policy, to *$24 per month,* payable monthly under the assumption rider. The covenants of the merger agreement were with the beneficiaries of the policies as well as the insured and former insurer. Although the assumption rider stated that it constituted notice of the time and amount of the premiums payable, the original contract of insurance provided: "Failure on the part of the Member to pay any annual dues or to pay any quarter annual dues or to pay any death assessments within fifteen days from the date of mailing, by the Secretary to the Member, of *notice* requesting the payment of the amount specified in such notice, shall forfeit all rights of said Member. . . ." And the letter from appellant which was sent to the insured with the assumption rider, stated: "*Premium notices* will be mailed direct from the Home Office of the Company, at San Francisco, California." However, no premium notice was given to the insured of the premium due September 1, 1937. When receiving the assumption rider and the letters from appellant

and Washington Mutual Life Association, it is apparent that the insured was somewhat confused with reference to where he stood in regard to his insurance, especially in view of the great increase in the fixed premium to be paid. This is evidenced by his letter of August 18, 1937, to appellant expressing uncertainty as to the amount of the insurance he could carry. It should also be observed that under the insured's policy with the Washington Mutual Life Association, the court found that he was paid up to July 31, 1937, as far as death benefits were concerned, and to September 15th as to quarterly dues. The grace period of fifteen days provided for in that policy extended the times to August 15th and September 30, 1937, respectively. Naturally the sudden demand for greatly increased premiums to be paid even before the expiration of the period of coverage which was then paid for, would be confusing. That communication may fairly be said to have been the commencement of negotiations with reference to his policy and the payment of the premiums. The rule is thus stated in *Spiegelman* v. *Metropolitan L. Ins. Co.*, 21 Cal. App. (2d) 299, 301 [68 P. (2d) 1006]:

"Nevertheless, it is well settled that when an insurance company, after knowledge of any default for which it might terminate a policy, enters into negotiations which recognize its continued validity, the right to claim a forfeiture for such default is waived; and a waiver may be implied from the acts of the parties. (*Murray* v. *Home etc. Assn.*, 90 Cal. 402 [27 Pac. 309, 25 Am. St. Rep. 133]; *Knarston* v. *Manhattan Life Ins. Co.*, 124 Cal. 74 [56 Pac. 773]; *Faris* v. *American etc. Co.*, 44 Cal. App. 48 [185 Pac. 1035].)" (See, also, *Bryson* v. *National Travelers Cas. Co.*, 206 Cal. 475 [274 Pac. 957].) Thereafter appellant made no further demand for the premium, but on September 16, 1937, plaintiff, beneficiary, sent $24, the premium due August 1, 1937, it being twenty-seven days after the expiration of the grace period on August 20, 1937. That premium was accepted by appellant, and in addition to the uncertainty existing in the insured's mind of which it had been advised by his letter of August 18, 1937, was specifically requested by plaintiff for information with respect to the amount of premium necessary and that the beneficiary was paying the premiums. It ignored that request although it knew that the grace period for the

premium due on September 1, 1937, would expire in a few days. On the next day, September 17, 1937, plaintiff sent $12, which would be half of the September premium, and again requested that she be advised of the correct amount of premium payable. Appellant kept that $12, and did not communicate with either the insured or the plaintiff until September 23, 1937, three days after the grace period, when it wrote an ambiguous letter. It may be inferred therefrom that appellant considered the policy still in force. It had received the $12, one-half of the premium for September, and stated: ''Since the premium is $24.00 per month it will be necessary for you to remit an additional $12 *to complete the payment.*'' (Emphasis added.) The only payment to be completed was the September premium. While it was also stated that the grace period had expired and an application for reinstatement should be signed, nothing was said about the policy having lapsed; nor was any demand made for interest on the overdue premium payment or for evidence of insurability to which appellant was entitled under the reinstatement clause in the policy. On the same date as appellant's letter, but before plaintiff had received it, she sent the $12 and appellant retained it.

Appellant contends that plaintiff had no standing to demand any consideration from it because her interest in the policy was only a mere expectancy as she was a beneficiary in a policy in which the insured reserved the right to change the beneficiary. The interest of a beneficiary in such a policy is ordinarily only an expectancy. Here the trial court found that the insured was indebted to her and she had many times paid the premiums on the policy and that ''. . . the plaintiff herein was, on November 17, 1936, and for many months prior thereto, a person to whom the said Frank F. Pratt is and was under a legal obligation for the payment of money, of which the death or illness of Frank F. Pratt might delay or prevent payment or performance, and in this regard the Court further finds that for many months prior and subsequent to November 17, 1936, the plaintiff loaned and advanced many sums of money to the said insured Frank F. Pratt in order to defray the living expenses of the said Frank F. Pratt and his wife, and for more than four years last past the plaintiff had paid the quarter annual dues and death assessments levied against the said Frank F. Pratt under said Washington Mutual Life Association policy No.

2615." Appellant accepted plaintiff's payment of the August premium after it was due and corresponded with her in regard to the policy. Inasmuch as plaintiff had paid the premiums many times before, and as she took the statement of the premium from the insured that had been sent to him by appellant and paid it, we believe it may be reasonably inferred that the insured knew plaintiff was acting on his behalf and consented thereto. She was also acting to protect her interest as a creditor; as we have seen appellant by its negotiations with plaintiff accepted her in that role. Cases of this character must each be decided upon its particular facts.

We are satisfied that the combination of all of the circumstances here presented compel an affirmance of the judgment, especially in light of the rule that in an appeal on the judgment roll all reasonable inferences must be indulged to support the judgment. It is true that upon her request the $24 September premium was returned to plaintiff but it was thereafter returned to appellant; she was under a mistaken belief as to her rights that the right to declare a forfeiture had in fact been waived and therefore a reinstatement was not necessary. (See *Spiegelman* v. *Metropolitan Life Ins. Co., supra.*)

Appellant asserts that there could have been no waiver because the insured was uninsurable and it did not know of it at the time the waiver is claimed to have occurred, citing *Schick* v. *Equitable Life Assur. Soc.*, 15 Cal. App. (2d) 28 [59 P. (2d) 163], but there is no showing here that the insured was not insurable. The most that appears is that he was ill in the middle part of September. From all that appears, the illness may have been a mere minor temporary condition which would have no effect on his insurability. It does not appear that he died of the same illness the next month.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Houser, J., and Traynor, J., concurred.

Appellant's petition for a rehearing was denied May 28, 1942.