[L. A. No. 6566.  In Bank.—August 29, 1921.]

MORRES SUMMER, Respondent, v. NEW YORK LIFE
    INSURANCE COMPANY (a Corporation), Appellant.

[1] LIFE INSURANCE LAW—ACTION ON POLICY—TIMELY MAILING OF
    PREMIUM—EVIDENCE—APPEAL.—On appeal from a judgment in an
    action to recover on a life insurance policy involving the timely
    mailing of a premium, the verdict upon which the judgment was
    rendered cannot be disturbed, where it appears from an analysis
    of the evidence, although largely consisting of written instru-
    ments, that the verdict necessitated a weighing of conflicting testi-
    mony of different witnesses and a determination of the degree
    of credence to be accorded them.

[2] ID.—GRACE FOR PAYMENT OF PREMIUM—INTEREST—CONSTRUCTION
    OF POLICY.—Under a provision of a life insurance policy providing
    if any premium is not paid on or before the day it falls due the
    policy-holder is in default, but allowing a grace of one month,
    subject to an interest charge of five per cent per annum for
    payment of the premium, during which time the insurance con-
    tinues in force, the policy is not forfeited by failure to pay the
    interest, as well as the premium, during the month, since the
    interest, in the absence of an express agreement to such effect, is
    not a part of the premium.

APPEAL from a judgment of the Superior Court of
Kern County.  J. W. Mahon, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Meserve & Meserve for Appellant.

E. A. Klein for Respondent.

LENNON, J.—Defendant appeals from a judgment en-
tered upon verdict rendered in favor of the plaintiff.  The
suit is brought upon a life insurance policy whereby the de-
fendant corporation, New York Life Insurance Company,
insured plaintiff Morres Summer and his wife, Sadie Sum-
mer, jointly, in the sum of two thousand dollars, payable to
the survivor upon proof of the death of either.  Sadie
Summer died on October 15, 1918, and plaintiff claims
that he is entitled to the two thousand dollars.

By the terms of the policy the insured agreed to pay
$17.92 by way of premium, said sum to be paid quarterly
in advance, commencing December 10, 1917, and the present
controversy is concerned with the question as to whether
plaintiff performed this particular prerequisite to the collec-
tion of insurance. The policy of insurance provided, in ef-
fect, that, upon the failure to pay a premium on the date
when it became due, the policy was to continue in force dur-
ing a definite period of grace, upon the expiration of which,
without payment being made, the policy should become inoper-
ative. The clause which deals with the period of grace is in the
following words: "If any premium is not paid on or before
the day it falls due the policy-holder is in default; but a
grace of one month (not less than thirty days) subject
to an interest charge of five per cent per annum will be
allowed for the payment of every premium after the first,
during which time the insurance continues in force. If
death occurs within the period of grace the unpaid premium
for the then current insurance year will be deducted from
the amount payable hereunder." It is conceded by both
parties that, up to September 10, 1918, plaintiff made all
required payments, but the premium due on that date, to
cover the three ensuing months, was not paid or tendered
until some time during the month of October, 1918. Defend-
ant contends that the check for the premium due September
10, 1918, was not mailed until after October 10th, the day
upon which the period of grace expired, and that, as a
consequence, the policy was forfeited and had ceased to
operate at the time of the death of Sadie Summer on
October 15. Practically all of the evidence adduced upon
the trial of the case pertained to this issue.

It was customary for the defendant Insurance Company
to send plaintiff a notice when the premium became due
and to inclose with the notice a self-addressed envelope.
In the inclosed envelope plaintiff, in turn, mailed to defend-
ant a check for the amount of the premium, receiving no
receipt other than the canceled check. Plaintiff testified
that he received a notice that a payment of premium was
due September 10, 1918, and that, on the afternoon of
October 4, 1918, he mailed a check for the sum of $17.92 in
one of defendant's self-addressed envelopes. A canceled

check to the order of the Insurance Company for that amount, signed by plaintiff and bearing date October 4, 1918, was introduced in evidence and identified by plaintiff as the one mailed by him. Plaintiff further testified that, late in the afternoon of October 15, 1918, shortly after the death of his wife, he went to the place of business of a friend and stated that his wife had died. The bookkeeper at that place (who died before this case came to trial) had previously written checks in favor of the Insurance Company for plaintiff, including the one dated October 4th. Upon hearing that plaintiff's wife had died, the bookkeeper informed plaintiff that he must notify the Insurance Company of that fact. Plaintiff asked the bookkeeper to write the notification, took the letter written at his request, and went home and placed it in one of defendant's envelopes, which he deposited in the same mail-box in which he had mailed the check of October 4th. This, in brief, is the plaintiff's case.

It is defendant's theory that the envelope mailed by plaintiff on the afternoon of October 15th contained the check dated October 4th, and not the information concerning the wife's death. In support of this theory, the cashier of defendant's branch office at Los Angeles, who stated that he was in charge of all correspondence, testified that the check above mentioned was received at defendant's Los Angeles office on October 16, 1918, in an envelope postmarked "Bakersfield, October 15, 7 P. M., 1918," which was introduced in evidence. He also testified that the first notice of the death of Sadie Summer, which reached his office, was contained in a letter from plaintiff's attorney, dated October 25, 1918, and received October 26, 1918. Several letters were admitted in evidence in behalf of defendant.

[1] Defendant contends that the verdict of the jury in plaintiff's favor rests upon a finding that the check was mailed prior to October 10, 1918, and that the preponderance of the evidence is against such a finding. Since a considerable portion of the evidence consists of written instruments, it is urged that this court is in as good a position as the jury to pass upon the weight of the evidence. When analyzed, however, it is apparent that the verdict of the jury necessitated a weighing of the conflicting testimony

of different witnesses and a determination of the degree of credence to be accorded each which cannot be disturbed on appeal. The only material evidence in plaintiff's favor was plaintiff's testimony and the canceled check. Opposed to this evidence was the testimony of the cashier of defendant's Los Angeles office and of a postmaster, together with certain written instruments. We are of the opinion that the written evidence, while it tended to contradict the plaintiff's testimony, did not so corroborate the testimony of defendant's witnesses as to conclusively contradict plaintiff's testimony or impair it to such an extent as to compel the conclusion that a finding based thereon was due to prejudice against the defendant rather than credence of the plaintiff. Thus, the letter written to the Insurance Company by plaintiff's attorney on October 25, 1918, reads as follows: ''This is to advise you that the insured, Sadie Summer, died, and her husband, Morres Summer, has requested me to so inform you of that fact and ask you to mail me the necessary papers to sign to establish the proof of death.'' By this letter defendant sought to disprove plaintiff's statement that the envelope mailed by him on October 15, 1918, contained a notice to the company of his wife's death. It does not necessarily follow from the wording above quoted that the letter of October 25, 1918, contained the first notification of death. Inasmuch as this was the first appearance of plaintiff's attorney in the matter, it was not unnatural for him, in his capacity of attorney, to open the correspondence with a formal notice of death and application for papers necessary in the establishment of the proof of death, regardless of whether or not plaintiff himself had previously notified the company. In fact, it would seem that this communication was intended primarily as a notification that plaintiff had requested his attorney to act for him in attempting to collect the insurance. A letter from the Insurance Company to plaintiff dated October 21, 1918, was introduced for the purpose of showing that the company had received no notice of death up to that date and that the check was received after October 10th. In this letter defendant's agent acknowledged receipt of plaintiff's check and stated that, as it had been remitted after the policy had lapsed, it would be necessary for plaintiff and his

wife to sign the inclosed application for reinstatement. This letter is, however, not conclusive against the plaintiff. At the time the letter was written by defendant's agent, plaintiff's letter of October 15th, containing the notice of death, may have been misplaced, or defendant's agent may have overlooked or for some reason have been unaware of the notice of death. These inferences the jury was entitled to draw. Perhaps the strongest evidence in defendant's favor is the testimony of the postmaster to the effect that a letter deposited in the mail-box mentioned by plaintiff after 3 o'clock in the afternoon of October 15, 1918, would, in all probability, bear the postmark "9 p. m.," instead of "7 p. m.," which was the hour stamped on the envelope mailed by plaintiff. Relying upon this testimony, defendant claims the envelope mailed October 15th must have been posted before 3 o'clock and, therefore, could not have contained notice of the death of Sadie Summer, which, according to the testimony of plaintiff, occurred about 4 o'clock. Inasmuch as plaintiff is not an educated man, nor thoroughly familiar with the English language, the jury may have concluded that he became confused in attempting to remember and state the exact hour of his wife's death and the precise moment of his arrival at the mail-box. While we consider the evidence in defendant's behalf exceedingly strong, we nevertheless find that the evidence in support of plaintiff's case is sufficiently substantial to raise a conflict and sustain a verdict in his favor.

Assuming the check to have been mailed on October 4th, defendant contends that plaintiff failed to make payment as required by the policy. It will be noted that the policy provides for an interest charge on the premium, at the rate of five per cent per annum, during the month of grace after the premium has become due. Plaintiff's check of October 4th was for $17.92, the amount of the quarterly premium. The interest thereon for the twenty-four days of grace was never requested by defendant nor paid by plaintiff. Defendant directs attention to this omission on plaintiff's part, claiming that it was essential to the continuance of the policy that the interest, as well as the premium, should be paid before the expiration of the period of grace.

[2] Unless clearly justified by the language of the contract, we cannot hold the parties to have contracted that a policy carrying a quarterly premium of $17.92 should be forfeited upon a failure to pay a sum which, in this case, was less than six cents and which could, in no event, have amounted to more than seven cents. That the defendant did not consider the policy as so providing is evidenced to some extent by previous conduct. For instance, the premium due June 10, 1918, was paid on June 24, 1918, and, although no interest was paid for the two weeks' delay, none was demanded and the policy was not considered as forfeited. "Provisions in an insurance policy are always construed so as to prevent a forfeiture, if the language will reasonably permit such a construction." (*O'Neill* v. *Caledonian Ins. Co.*, 166 Cal. 310, 315, [135 Pac. 1121, 1123]; *Welch* v. *British American etc. Co.*, 148 Cal. 223, [113 Am. St. Rep. 223, 7 Ann. Cas. 396, 82 Pac. 964].) The policy provides: "A grace of one month (not less than thirty days), subject to an interest charge of five per cent per annum will be allowed for the payment of every premium after the first, during which time the insurance continues in force." "Interest is the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money." (Civ. Code, sec. 1915.) It cannot be considered a part of the principal, or basic fund, unless the parties expressly agree to do so (Civ. Code, sec. 1919), and, since there is no such agreement in the instant case, the words "premium" and "interest," appearing in the above quotation, must be regarded as separate and distinct terms. While it is clearly intended that the policy shall lapse upon the failure to pay the premium within the month of grace, no such intent is manifest in the event of a failure to pay interest. Assuming that the interest may be regarded as due and payable at the same time as the premium on which it is charged, it does not follow that the provision with respect to forfeiture attaching to the failure to pay the premium within the month of grace attaches, likewise, to the omission to pay the interest when due. The grace of one month is allowed for the payment of the "premium," and, in the absence of a more specific provision concerning the acts required of the defaulting policy-holder during the time the insurance

continues in force, there is a natural implication that the payment of the *premium* within the period of grace will prevent a lapse of the policy. Since reason does not require that the language of the policy be construed as prescribing a forfeiture upon failure to pay interest within the month of grace, it will not be accorded that interpretation.

Upon the record before us, it must be held that there was no lapse of the policy prior to the death of the insured. The judgment in favor of plaintiff is, therefore, affirmed.

Shaw, J., Sloane, J., Shurtleff, J., Lawlor, J., and Wilbur, J., concurred.