[Civ. No. 47164. Second Dist., Div. Three. May 24, 1976.]

ARTHUR F. SILVA, JR., et al., Plaintiffs and Appellants, v. NATIONAL AMERICAN LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Price, Martin & Crabtree and E. Dean Price for Plaintiffs and Appellants.

Booth, Mitchel, Strange & Smith and Stephen H. Galton for Defendant and Respondent.

## OPINION

ALLPORT, J.—Effective December 25, 1968, National American Life Insurance Company issued a decreasing term policy of insurance on the life of A. F. Silva of 1405 Louise Avenue, Modesto, California. The policy was written in conjunction with a mortgage loan. The monthly loan payments, payable in advance to the lender Western Mortgage Corporation included the premium for the insurance. All payments were made by Silva when due up to and including the one of September 28, 1972, covering the period to October 25, 1972. Prior to October 25 Silva sold the mortgaged property and the loan was assumed by the buyer. No further premiums were paid on the insurance policy after September 28, 1972. Silva died on December 27, 1972, and his surviving children filed this action seeking the proceeds of the policy after National American refused payment on the ground the policy had lapsed for nonpayment of premium prior to the death of the insured.

The trial court granted a motion for summary judgment in favor of National American and the Silvas appeal therefrom contending that the policy was in force and effect at the time of the insured's death, and that summary judgment should have been granted in their favor.

### The Policy

The applicable provisions of the policy are as follows:

"CONSIDERATION. This policy is issued in consideration of the application therefor and the timely payment of the premiums specified herein. If any premium is not paid when due or within the grace period, this policy shall lapse as of the date the defaulted premium was due and, except as herein otherwise provided, shall become void and without value. . . .

"PREMIUMS. The first premium hereunder shall be due on the effective date of this policy. All premiums after the first shall be payable in advance either at the Home Office of the Company or to an agent of the Company. A grace period of thirty-one days shall be allowed for the payment of each premium after the first; provided, that if the Insured shall die within the period of grace any unpaid premium shall be deducted from any settlement hereunder. . . . Premiums for this policy are payable monthly when paid through the Lending Institution. In the event of termination of this method of payment for any cause whatever,

premiums thereafter must be paid at annual intervals at an annual premium rate of twelve times the monthly premium rate."

*Discussion*

It is clear, if not conceded, that, by its own terms, the policy lapsed on October 25, 1972, for nonpayment of premium when due or within the 31-day grace period. (*Schick* v. *Equitable Life Assur. Soc.,* 15 Cal.App.2d 28, 33 [59 P.2d 163].)

■ The policy beneficiaries contend, however, that National American waived the lapse by resorting to use of a termination notice to cancel the coverage and that the use of termination notice method of cancellation was ineffectual in the instant case because the notice was improperly addressed and no proof was adduced at trial to establish actual receipt of the notice by the insured. The argument is without merit. The policy did not require cancellation or that a notice be sent to effectively terminate the coverage. It appears from the answers to interrogatories and declarations filed in connection with the motions for summary judgments that this notice was mailed October 9, 1972, by the insurance agent, Bond Insurance Agency, after it had learned of the sale of the property on or about October 1, 1972. The act of mailing the termination notice was not a waiver by the carrier of its right to rely upon the automatic termination provision of the policy. The notice, while entitled "Termination Notice" by its terms was simply confirmation of the lapse for nonpayment of premium resulting from sale of the mortgaged property.[1] We find nothing in *Pierson* v. *John Hancock Mut. Life Ins. Co.,* 262 Cal.App.2d 86 [68 Cal.Rptr. 487], relied upon by plaintiffs, persuasive or compelling of a contrary decision regarding termination by notice.

■ It is also contended that the carrier waived, or is estopped from relying upon, the automatic lapse of the policy for nonpayment of premiums because it entered into negotiations with the insured recognizing the continued validity of the policy. The cases of *Faris* v. *American Nat. Assur. Co.,* 44 Cal.App. 48, 56 [185 P. 1035], *Page* v. *Washington Mut. Life Assn.,* 20 Cal.2d 234, 241 [125 P.2d 20], and *Lincke* v. *Mutual Benefit etc. Assn.,* 76 Cal.App.2d 222 [172 P.2d 912], are relied upon by plaintiffs in support of the waiver argument.

---

[1]This notice reads in pertinent part: "This notice is being sent merely to confirm termination of the policy and is not a request for payment of premium. No reply is required unless premium has been paid beyond the date indicated above."

Conceding that negotiations with an insured after default may under some circumstances operate as a waiver, National American argues that the rule of waiver or estoppel is inapplicable to the facts of the instant case. We agree. The so-called "negotiations" in the case at bench consisted of mailing the following communication:

"December 27, 1972

"Mr. Arthur F. Silva
1405 Louise Avenue
Modesto, California 95350

"Re:   Policy No. 20024272

HOME OFFICE

"Dear Mr. Silva:

"Western Mortgage Corporation has notified us that your mortgage loan has been assumed as of October 1972. You were insured by us as one of their borrowers.

"The policy you have is a Decreasing Term Life Insurance contract with an initial value of $13,043.00. This policy will decrease only slightly each year for another 23 years. The value as of December 25, 1971 is $12,430.00.

"Fortunately, the Mortgage Life Protection Plan you have is of an individual nature, and can be used to protect any new loan or to supplement your personal insurance program. You do not have to have a mortgage to continue with this plan, and it can be changed to a permanent plan which would accumulate values.

"To prevent loss of this valuable protection, we have made arrangements for you to continue with this coverage by making payments directly to us on an annual basis. Our billing statement is enclosed for premiums due to the renewal date of the policy. You will be billed for the annual premium prior to each premium renewal date thereafter.

"We are pleased to have you as one of our insureds and we look forward to providing continuous service. To that aim, we are enclosing a card;

please complete and forward this, and, if you have any further questions, do not hesitate to contact us.

"Sincerely,

*Peggy Friend*

"Peggy Friend, Manager
"Policyholder Service    "

We note this letter was mailed on December 28, 1972, to Silva at 1405 Louise Avenue, Modesto and thereafter forwarded to him at 21600 Westpark Street, Hayward, California, where it was found unopened at the time his body was discovered on January 3, 1973.

The mailing of this letter standing alone fails to establish a waiver by the carrier of the policy lapse for nonpayment of premium. In each of the cases cited in support of the waiver theory communications or transactions which took place between the carrier and its insured prior to the death were held to be sufficient to constitute "negotiations" thus establishing a basis for a finding of waiver. Each of these cases is clearly distinguishable from the facts in the instant case. We are referred to no case, nor has independent research revealed the existence of authority, holding that a single letter, regardless of its content, written on the date of an insured's death, mailed the day following the death and found unopened several days after discovery of the body constitutes a basis for the waiver urged herein.

The applicable law is set forth in *Scott* v. *Federal Life Ins. Co.,* 200 Cal.App.2d 384, at pages 391-392 [19 Cal.Rptr. 258], wherein it is said:

"An express provision of an insurance contract stipulating that a default in payment renders the policy void or causes it to lapse is valid, and a default in such payment ordinarily forfeits the policy where statutory provisions are not violated. (45 C.J.S., Insurance, § 614, p. 447.) Waiver and estoppel, however, are frequently applied in insurance law in favor of the insured or the beneficiary under a policy. The courts have generally applied the liberal rule in favor of the insured. (*Knarston* v. *Manhattan Life Ins. Co.,* 140 Cal. 57 [73 P. 740]; *Truck Ins. Exch.* v. *Industrial Acc. Com.,* 36 Cal.2d 646 [226 P.2d 583].) Like any other contracting party, an insurance company may waive provisions placed in a policy solely for its own benefit and may, by its conduct, be estopped

from asserting defenses which might otherwise be available. (*J. Frank & Co.* v. *New Amsterdam Cas. Co.,* 175 Cal. 293, 295-296 [165 P. 927].)

"To constitute a waiver there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. (51 Cal.Jur.2d, Waiver, § 3, pp. 307-308, and cases cited therein.) The party who has the right may waive it without reliance by another. The doctrine of estoppel, however, is based on the theory that the party estopped has by his declarations or conduct misled another to his prejudice so that it would be inequitable to allow the true facts to be used against the party misled.

" '[T]he party relying upon the doctrine of equitable estoppel must prove the existence of the four required elements essential to its application: (1) that the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. [Citations.] Negligence that is careless and culpable conduct is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel. [Citations.]' (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.,* 54 Cal.2d 773, 778-779 [8 Cal.Rptr. 448, 356 P.2d 192].)

"Whether a waiver has occurred is usually a question of fact the determination of which, if supported by substantial evidence, will not be disturbed on appeal (*Grantham* v. *State Farm etc. Ins. Co.,* 126 Cal.App.2d Supp. 855, 862 [272 P.2d 959, 48 A.L.R.2d 1088]; *Phillips* v. *Reserve Life Ins. Co.,* 128 Cal.App.2d 540, 547 [275 P.2d 554]), unless the only inference which can be drawn from the evidence is to the contrary. (*Huttlinger* v. *Far West Enterprises,* 131 Cal.App.2d 808, 811 [281 P.2d 554]; *O'Connell* v. *Weitzman,* 168 Cal.App.2d 400, 404 [36 P.2d 592].) The rule is the same for estoppel. (*Cardosa* v. *Fireman's Fund Ins. Co.,* 144 Cal.App.2d 279, 282-283 [300 P.2d 875]; *Sawyer* v. *City of San Diego,* 138 Cal.App.2d 652, 662 [292 P.2d 233].)"

More succinctly stated: "When an insurance company, with full knowledge of all the facts, enters into negotiations and relations with the assured, recognizing the continued validity of the policy, the right to a

forfeiture for any previous default which may be asserted is waived. [Citations omitted.]" (*J. Frank & Co.* v. *New Amsterdam C. Co.,* 175 Cal. 293, 296 [165 P. 927].)

The most that can be said for the letter in the instant case is that it was an attempt on the part of the carrier to negotiate with the assured for reinstatement of the lapsed policy upon condition that all delinquent premiums be paid and that future premiums be paid in advance on an annual basis. While the letter recognizes the physical existence of the policy, it does not recognize the validity of the coverage extended thereby. The second sentence of the letter is compelling of this conclusion where, after confirming the transaction of October 1972 whereby the mortgage loan had been assumed, the writer addressed Silva as *having been,* rather than *being,* an assured as of December 27, 1972. We consider the carrier's action in the case at bench to be analogous to that of the mutual benefit society in *Carlson* v. *Supreme Council A. L. H.,* 115 Cal. 466 [47 P. 375], where, following suspension of membership and forfeiture of his beneficial certificate for failure to pay assessments in accordance with the rules of the society, the beneficiary, after the member's death but during the grace period, tendered the full amount due and demanded payment of the face value of the certificate contending, inter alia, that the action of the society in levying and sending notice of an assessment in December constituted a waiver of the forfeiture resulting from nonpayment of the November assessments. In holding that the beneficiary could not avail herself of the right to reinstate the certificate by payment of the delinquent assessments the court said at pages 476-477:

"There was, however, a condition subsequent, contained in the by-laws of defendant, and made a part of the agreement, and in support of which his payment of assessments was a sufficient consideration, viz., that by the payment, within sixty days after forfeiture, of the previous assessments and such others as had accrued in the interim, he could defeat and annul the forfeiture. This was an option of which he might avail himself. He failed to do so, and died within the sixty days. Could his beneficiary avail herself of this privilege within that period? Bacon, in his work on Benefit Societies and Life Insurance, at section 385 *b,* lays down the rule as follows: 'If a member neglects to become reinstated during his lifetime, he cannot be reinstated after his death, though the period in which he might be reinstated if living has not expired.'

'Where a member had been suspended for nonpayment of assessments, and he had neglected, during his lifetime, to secure his reinstatement in accordance with the terms of his certificate, by paying arrearages while in good health and within a certain time, his restoration to membership cannot be effected after his death by payment by another person, within the time limited, of the sum due from him at the time of his death.' (Niblack on Benefit Societies, sec. 292.)"

With respect to waiver we find the following statement of the court of interest:

"It is a general rule that if an insurance company, after knowledge of any default for which it might terminate the contract of insurance, enters into negotiations or transactions with the assured, which recognizes the continual validity of the policy and treats it as still in force, the right to claim a forfeiture for such previous default is waived. (*Murray* v. *Home etc. Assn.,* 90 Cal. 402; 25 Am.St.Rep. 133, and cases there cited.)

"That rule has no application, however, to a case like the present, where the insured has a right to reinstatement, within sixty days after forfeiture, upon paying the amount due and all accruing assessments subsequent to the default and prior to reinstatement. Manifestly the company in such a case must continue to levy the assessments, and to give notice thereof is but to impart needed information to the insured, to the end that he may exercise his right of reinstatement.

"Niblack, after discussing the question of waiver, states the rule in cases like the present as follows: 'When a delinquent member has a right to reinstatement to benefits under his contract of insurance, either with or without conditions, the making of subsequent assessments which he is required to pay before he can be reinstated, and the giving him notice thereof, do not in any manner waive his first default, but are entirely consistent with the duty of the society toward him until he has been in arrears for the time stipulated within which he may be reinstated.' (Citing *Leffingwel* v. *Grand Lodge,* 86 Iowa, 279; *Baumgart* v. *Modern Woodmen,* 85 Wis. 546; *Stiepel* v. *Association,* 55 Mo.App. 224; Niblack on Benefit Societies, sec. 306, p. 585; *Crawford County Mutual Ins. Co.* v. *Cochran,* 88 Pa.St. 230; *Lantz* v. *Vermont etc. Ins. Co.,* 139 Pa. St. 546; *Lyon* v. *Supreme Assembly,* 153 Mass. 83; *Mutual Protection etc. Ins. Co.* v. *Laury,* 84 Pa.St. 43.)" (Pp. 479-480.)

By analogy to the *Carlson* case, we are satisfied that in the instant case neither of the doctrines of waiver or estoppel are available to defeat the automatic lapse of the policy for nonpayment of premiums and, in any event, the policy could not be reinstated by the beneficiary after the death of the insured.

We find support for our conclusion in the opinion of the South Carolina Supreme Court in *Hodge* v. *National Fidelity Ins. Co.*, 221 S.C. 33 [68 S.E.2d 636], wherein it was held that an accident policy insuring against death which had expired, was not to be deemed effective on theories of waiver and estoppel although a letter had been written and mailed by the carrier offering a renewal of the policy. The letter was found unopened on a coffee table after the death of the insured. In *Hodge,* the court said at page 640:

"The trial Judge awarded judgment in favor of respondent upon the theory that appellant waived the expiration date of the policy and extended its coverage to a date subsequent to the death of the insured. It is well settled that insurance companies may waive forfeitures and are frequently estopped by their conduct from claiming breaches of conditions in policies. But there is no basis in this case for a claim of estoppel and we do not think that the doctrine of waiver has any application. As we have heretofore pointed out, the contract under consideration is not for an indefinite term like the ordinary life insurance contract under which the insurer is bound to accept timely payment of the premiums, but is a contract for a definite term. We do not have a situation where the insurer is asserting a forfeiture by reason of some condition in the policy. The insurer here denies that there was a contract of renewal. There must be a contract before there can be forfeiture. What respondent is really seeking is not to prevent a forfeiture but to make a new contract. The doctrine of waiver 'cannot be successfully invoked to create a primary liability, or a liability for a benefit not contracted for at all'. 45 C.J.S., Insurance, § 674, p. 617. As stated in Jones v. New York Life Insurance Co., 69 Utah 172, 253 P. 200, 203: 'The theory of the waiver of the terms of a contract must necessarily presuppose the existence of a valid contract. Unless and until a contract exists between the contracting parties it would seem to be illogical to contend that either party can be said to have waived any of the terms or requirements of the contract.' "

Likewise in the instant case the insurer denies that a contract existed since it had lapsed by its own terms.

The judgment is affirmed.

Ford, P. J., and Potter, J., concurred.