**Aida A. MARDIROSIAN,**
**Plaintiff-Appellee,**

**v.**

**LINCOLN NATIONAL LIFE**
**INSURANCE COMPANY,**
**Defendant-Appellant.**

**Nos. 83–6201, 83–6236.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1984.

Decided Aug. 3, 1984.

Volney F. Morin, Los Angeles, Cal., for plaintiff-appellee.

James J. Moak, Lonnie E. Woolverton, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendant-appellant.

Before CHAMBERS, CHOY, and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

Lincoln National Life Insurance Company ("Lincoln") appeals a grant of partial summary judgment in favor of Mardirosian that held she is entitled to the proceeds of a policy of insurance on the life of her husband. Mardirosian cross-appeals the district court's ruling on a motion in limine that, during a trial on damages for an alleged bad faith refusal to pay the benefits, no reference be made to attorney's fees as an item of damages. We affirm in part, reverse in part, and remand.

## BACKGROUND

In 1975, Aida and Greg Mardirosian applied to Lincoln for a policy of insurance on Greg's life. The issued policy listed Greg as the insured and Aida as the owner and beneficiary. The policy application was checked to request Lincoln to send premium notices to the insured, Greg. The policy provided that coverage would terminate if a premium was not paid "on or before the date on which it is due."

In late 1979, Aida and Greg separated and each moved into a new residence. In March and April 1980, Lincoln mailed to Greg notices of premium due at the address shown on the policy application. Each notice was returned, marked "moved—left no address." According to its company procedures, Lincoln instituted an address search for Greg. These efforts failed. Lincoln made no attempt to notify

Aida of the prospective lapse. The policy lapsed on April 7, 1980 for non-payment of premium. Greg Mardirosian died on July 18, 1980.

Sometime thereafter, Aida discovered that the policy had lapsed. On December 19, 1980, through her attorney, Aida mailed a check for payment of the premium which had been due in April. An accompanying letter stated in part:

> Mrs. Mardirosian ... has furnished me with the enclosed check in the amount of $290.06 payable to the Lincoln National Life Insurance Company in payment of the premium which was due and of which she never received notice.
>
> Please accept the enclosed check in full payment of the premium due and please also pay the full amount of the proceeds to our client in care of our offices for the amount of the policy due in the year of death of Mr. Mardirosian....

Lincoln cashed the check, later explaining that it deposited it in a "suspense account" until its legal department could review the matter. In a letter dated January 15, 1981 Lincoln informed Aida that her check was not timely payment of the premium and refunded her payment.

Aida filed a state court complaint seeking a declaration of her right, as owner of the policy, to receive notice of premium renewals prior to cancelation. She also alleged that Lincoln waived its right to deny reinstatement when it cashed the check she tendered in December 1980. She further alleged a bad faith refusal to pay the benefits. Lincoln removed the action to federal court, premising jurisdiction on diversity of citizenship, 28 U.S.C. § 1332.

The district court granted Aida's partial motion for summary judgment holding that she is entitled to the proceeds of the policy. The case went to trial on the issue of whether Lincoln was liable to Aida for compensatory and punitive damages for an al-

leged breach of the implied covenant of good faith and fair dealing. The court granted Lincoln's motion in limine that Mardirosian make no reference to attorney's fees because they are not allowable as an item of damages. The jury returned a verdict in favor of Lincoln.

## DISCUSSION

### 1. Summary Judgment.

■ A grant of summary judgment is reviewed de novo. *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). The reviewing court must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984). In this diversity case, we must apply the law of California. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We "must ascertain from all available data" the applicable California law. *Estrella v. Brandt,* 682 F.2d 814, 817 (9th Cir.1982).[1]

We must determine if the district court is correct as a matter of law in holding that Lincoln had a duty to provide Aida with notice prior to cancelation of the policy. If we hold the district court erred, Mardirosian urges us to affirm the district court on the ground that Lincoln waived its right to claim forfeiture of the policy because it cashed the check she forwarded to pay the overdue premium.

### A. Requirement of notice

In *Estate of Coate,* 98 Cal.App.3d 982, 159 Cal.Rptr. 794 (1979), a case of first impression in California, a California Court of Appeal held "that an insurer has a duty to notify an assignee of a prospective lapse and right to reinstatement of" a life insurance policy. *Id.* at 987 & 990, 159 Cal.Rptr.

---

**1.** Currently pending before an en banc panel of this court is the issue of whether any deference is due to the district judge's interpretation of the law of the state in which he or she sits. *See Churchill v. F/V Supersonic,* No. 82–3644 (argued Feb. 15, 1984). The decision we reach

today is compelled even if we apply substantial deference to the district court's interpretation of California law. *See Pacific Mutual Life Insurance Co. v. American Guaranty Life Insurance Co.,* 722 F.2d 1498, 1500 (9th Cir.1984).

794. The insured had the right to receive notices of premiums, notices of intended lapse, and offers of reinstatement. *See id.* at 988, 159 Cal.Rptr. 794. He assigned "all rights, title and interest" in the policy to a creditor of the insured who was also the primary beneficiary of the policy. *Id.* at 987, 159 Cal.Rptr. 794. The insurer recorded the assignment. The policy did not except from the general assignment of rights under the policy the right to receive notices pertaining to a prospective lapse. *Id.* at 988, 159 Cal.Rptr. 794. In reaching its decision, the court reasoned that because the insured had the right to receive these notices of a prospective lapse, that "right passed by assignment to [the assignee], and the insured agreed to be bound by the assignment of such rights upon its recordation at the home office." *Id.* at 988, 159 Cal.Rptr. 794.

■ We do not question the reasonableness of the analysis or conclusion reached by the California Court of Appeal in *Coate.* Nonetheless, we conclude that under the facts of this case the district court erred in holding that Lincoln had a duty to give to Aida notice of the prospective lapse of the policy.

The policy application offered the Mardirosians the option of selecting that premium notices be sent to either the "proposed insured", Greg, or the policy owner, Aida. The Mardirosians checked the box directing Lincoln to send the notices to Greg. Lincoln complied with these instructions, mailing two notices to Greg. In fact, per its internal procedures, Lincoln instituted an address search for Greg when the premium notices were returned indicating that Greg had moved. In attempting to contact Greg but not Aida, Lincoln abided by the terms of the policy and the policy application. The insurer in *Coate,* on the other hand, failed to abide by the assignment. Unlike *Coate,* there is here no ambiguity that should be construed against the insurer. *See Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 269, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

Furthermore, by the time of the decision in *Coate* the California Legislature had enacted section 10173.2 of the Insurance Code. That section requires an insurer to give notice to assignees of a prospective lapse of a policy. The court in *Coate* did not apply this provision because the assignment took place prior to the enactment of the statute. *See Coate,* 98 Cal.App.3d at 987, 159 Cal.Rptr. 794. Nonetheless, the enactment of that provision evinced a state policy to protect assignees of insurance policies. There is no comparable provision applicable to owners of insurance policies.

Accordingly, we conclude that the highest court of California would not extend the reasoning of *Coate* to the facts of this case. The district court erred as a matter of law in holding otherwise.

### B. Waiver

■ Because it agreed with Mardirosian's argument that she should have been given notice, the district court did not consider her argument that Lincoln waived its right to claim forfeiture of the policy because it cashed a check she forwarded to pay the overdue premium and temporarily retained the proceeds. Waiver occurs when there is "an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Silva v. National American Life Insurance Company of California,* 58 Cal.App.3d 609, 615, 130 Cal.Rptr. 211 (1976). The applicability of the doctrine is generally a question of fact. *Id.* There have been no factual findings on this issue.

Lincoln argues the doctrine is not applicable in this case. We construe its argument in two ways: (1) California law does not allow reinstatement of an insurance policy when the party to be insured is uninsurable at the time reinstatement is sought, and (2) reinstatement is not proper here because Aida did not furnish evidence of insurability or tender 5% interest, both of which the insurance agreement lists as

conditions of reinstatement. Each of these arguments must fail.

To support the first argument, Lincoln relies on language in *Silva* and *Ryman v. American National Life Insurance Company*, 5 Cal.3d 620, 96 Cal.Rptr. 728, 488 P.2d 32 (1971). The court in *Silva* found the doctrine of waiver was unavailable and added: "... in any event, the policy could not be reinstated by the beneficiary after the death of the insured." *Silva*, 58 Cal. App.3d at 618, 130 Cal.Rptr. 211. The California Supreme Court considered the insurability issue in *Ryman* and held the plaintiffs were entitled to reinstatement because "they were insurable and had fully paid their overdue premiums." *Ryman*, 5 Cal.3d at 630, 96 Cal.Rptr. 728, 488 P.2d 32. The court later stated: "[I]f at the time the application [for reinstatement] was submitted the insurer would have been justified in rejecting the application, or in requiring further proof before reinstating the policy, it may do so ...." *Id.* at 636, 96 Cal.Rptr. 728, 488 P.2d 32 (*quoting Kennedy v. Occidental Life Insurance Co.*, 18 Cal.2d 627, 633, 117 P.2d 3 (1941)).

■ Lincoln reads this language too broadly. The California Supreme Court in *Ryman* recognized that applicants for reinstatement may be uninsurable. In consideration of that, it "emphasize[d] that an insurer that *acts within a reasonable time*, may, of course, deny reinstatement to all who are uninsurable at the time they seek reinstatement." *Id.* 5 Cal.3d at 635, 96 Cal.Rptr. 728, 488 P.2d 32 (emphasis added). The court realized that even with an uninsurable applicant, waiver could still occur if the insurer does not deny reinstatement within a "reasonable time." *Accord Smith v. Westland Life Insurance Co.*, 15 Cal.3d 111, 123, 123 Cal.Rptr. 649, 539 P.2d 433 (1975) (holding premiums without providing insurance is "unconscionable"). Whether the time the insurance company held the check in this case is a reasonable time is a question that must be considered by the trier of fact.

■ Lincoln's second argument is also unconvincing. The fact Mardirosian did not satisfy the conditions for reinstatement is irrelevant to whether Lincoln has waived the right to deny reinstatement. Her failure to meet the conditions gave Lincoln a right to deny reinstatement. Whether Lincoln waived that right is another question.

■ To adopt Lincoln's arguments would lead to results inconsistent with the principle of waiver. In an extreme example, it could mean that an insurance company could accept a check, cash the check, and have use of the proceeds for an unlimited period of time without being required to provide insurance. That is an unconscionable result. *See Smith v. Westland Life Insurance Co.*, 15 Cal.3d 111, 124, 123 Cal. Rptr. 649, 539 P.2d 433 (1975). Furthermore, it is of no legal significance that Lincoln deposited the check into a "suspense account." *See Ryman*, 5 Cal.3d at 628–29, 96 Cal.Rptr. 728, 488 P.2d 32.

We remand this case to the district court for the factual determination of whether Lincoln waived its right to deny reinstatement of the policy.

**2. Attorney's Fees.**

In her cross-appeal Mardirosian argues that the district court erred in granting Lincoln's motion in limine that no reference be made to any attorney's fees allegedly incurred by her in the conduct of the case. She contends she was unable to offer evidence of punitive damages because she was denied the right to offer evidence of actual damages, those being attorney's fees. *See A. Esparza v. Specht*, 55 Cal.App.3d 1, 6, 127 Cal.Rptr. 493 (1976) (under California law punitive damages cannot be awarded unless actual damages are suffered).

We need not reach this issue. The jury concluded that Lincoln had not acted in bad faith in its handling of her claim. Because there was no liability, Mardirosian had no right to damages. The cross-appeal is moot.

## CONCLUSION

We reverse the district court's decision that California law required Lincoln to pro-

vide to Aida notice of the prospective lapse of the insurance policy. We remand this case for determination of the factual issues concerning whether by cashing her check and temporarily retaining the proceeds Lincoln waived its right to deny reinstatement.

AFFIRMED in part, REVERSED in part, and REMANDED.