Thomas E. KLOTZ, Plaintiff,

v.

**OLD LINE LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**Civil No. 96–20007–SW.**

United States District Court,
N.D. California.

Dec. 13, 1996.

Michael A. Antoncich, Monterey, CA, for Plaintiff.

Robert D. Phillips, Jr., Adrienne C. Publicover, Bowles & Verna, Walnut Creek, CA, for Defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

The parties have filed cross-motions for summary judgment or in the alternative, for adjudication of specific issues, in this diversity action to recover benefits under a life insurance policy. After consideration of the papers and the arguments at the October 30, 1996 hearing, the Court enters the following Order.

## BACKGROUND

This case involves a life insurance policy ("Policy") issued on the life of Michelle Klotz ("Michelle"), wife of the Plaintiff, Thomas Klotz ("Thomas"). On or about April 20, 1993, the Old Line Life Insurance Company of America ("Old Line") issued to Michelle the Policy insuring her life for $125,000, with Thomas designated as the primary beneficiary. Michelle signed up for the Policy through a local insurance agent, Anthony Mosel ("Mosel").

Premiums were due on or before the 20th day of each month, followed by a 31–day grace period for payment during which the Policy remained in effect. Michelle paid her first $20.84 premium on April 20, 1993. The Policy specifies that "premiums are payable at 01 month intervals from 4/20/93," and, on another page of the contract, that "[w]ith our consent, premiums may be paid at other intervals." A section of the contract captioned "Premium Payment" specifies the date of default:

> .... Any premium, after the first, not paid on or before its due date will be in default. Such due date will be the date of default.

The section captioned "Grace Period" indicates the date on which insurance would cease for nonpayment of premium:

> A 31–day grace period, without interest charge, is allowed for the payment of each premium after the first. This policy will stay in force during this period. If the premium is not paid by the end of this period, insurance will cease.

Timely monthly payments continued through automatic check drafts from the Klotzes' joint bank account through August 20, 1994. After Michelle moved out of the family home in late July 1994, Thomas closed

the joint checking account. Soon thereafter, Michelle and Thomas opened separate checking accounts.

Because the joint checking account had been closed, the automatic check draft for the September 20, 1994 premium did not go through. On September 27, 1994, Old Line mailed Michelle a "Notice of Returned Pre-Authorized Check Dated September 20, 1994," asking Michelle to "[p]lease mail your payment of $20.84 by October 20, 1994 to insure continuation of your valuable insurance coverage."[1] On October 16, 1994, Michelle complied with the letter and sent to Old Line the September premium payment. At this point, the next premium was due on October 20, 1994. Counting 31 days (the grace period) from October 20, 1994, the date of automatic lapse for nonpayment of the October premium would occur November 20, 1994.

On October 28, 1994, Michelle spoke with Agent Mosel and requested that Old Line bill her directly, rather than through automatic drafts. On November 3, 1994, Old Line sent Michelle a form letter which provided her with the paperwork for relaunching automatic monthly drafts from her new checking account. The form letter stated, "If we do not hear from you, this policy will be placed on a direct billing so that processing may continue." Michelle never responded to the invitation to begin automatic check drafts, and thereafter, Old Line, consistent with the terms in the letter, placed Michelle on direct billing. Kenneth J. Griesemer, Old Line senior vice president and treasurer, explained that Old Line then placed Michelle on direct billing, which required quarterly payments. Griesemer Declaration at 3. Old Line never provided Michelle with information relating to the schedule, due dates, or grace periods under the new quarterly billing system.

On November 28, 1994, eight days after the automatic lapse of the Policy, Old Line sent a bill to Michelle captioned "Notice of Payment Due on October 20, 1994." The bill indicated $65.00 due for "03 MONTHS PREMIUM," but it failed to specify which three

months it covered, when the payment was due, or the term of the grace period. The letter did not indicate that the Policy had automatically lapsed or had been terminated. A line of copy on the bill read, "We appreciate the opportunity to participate in your financial planning needs." Michelle never submitted a payment in response to this bill.

On December 29, 1994, Old Line mailed to Michelle a "NOTICE OF TERMINATION." The letter was never received by Michelle, who had been murdered by her boyfriend on December 29, 1994. The Termination letter stated:

> We have not received the October 20, 1994 premium and the grace period has expired. As of that date, your policy has no cash value and is terminated. PLEASE CONTACT U.S. FOR INFORMATION ON REINSTATING YOUR POLICY.

Within a week of Michelle's death, Thomas sought to collect under the policy. Old Line refused to pay benefits to Thomas on the grounds that the Policy had automatically lapsed prior to Michelle's death. Griesemer Dec. at 4. Thomas then initiated this action to recover the insurance proceeds.

## DISCUSSION

1. *The Cross Motions for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure states that judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately to determine whether any genuine issues of material fact exist. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir.1975). A careful review of the materials submitted by the parties in both motions for summary judgment reveals that the parties have no disputes over any of

---

1. This letter incorrectly states that Michelle had to pay the premium by October 20, 1994 in order to maintain her insurance coverage. Under the Policy's 31–day grace period provision, the final date for payment of the September 20 premium fell on October 21, not October 20, 1994.

the material facts in this case. Therefore judgment as a matter of law is appropriate.

Applying the law to the undisputed facts, this Court must now determine the following: (1) whether the Policy had lapsed; (2) if the Policy had lapsed, whether Old Line by its conduct had waived the right to declare an automatic lapse; and (3) if there is no waiver, whether Old Line is estopped from declaring the policy automatically terminated. In short, the issue in both motions for summary judgment is whether the Policy remained in force on the date of the decedent's death.

### A. *Policy Lapse*

■ An express provision of an insurance contract stipulating that a default in payment renders the policy void or causes it to lapse is valid, and a default in such payment ordinarily forfeits the policy where statutory provisions are not violated. *Scott v. Federal Life Ins. Co.*, 200 Cal.App.2d 384, 391–92, 19 Cal.Rptr. 258 (1962). The Policy specifies that "insurance will cease" at the end of the 31–day grace period. Thus, under the terms of the Policy, insurance coverage would automatically lapse at the close of the grace period if the premium is not paid by the end of this period.[2] Michelle's Policy therefore automatically lapsed on November 20, 1994, 31 days after the due date of October 20, 1994.

### B. *Waiver*

■ Plaintiff contends, however, that Old Line, by its conduct in the months of November and December, 1994 waived its right to declare the Policy automatically terminated.

■ California courts have consistently held that negotiations with an insured after an automatic lapse may under some circumstances operate as a waiver. *Silva v. National American Life Insurance Company of California*, 58 Cal.App.3d 609, 613, 130 Cal. Rptr. 211 (1976). When an insurance company, with knowledge of a default for which it might terminate insurance coverage, enters into negotiations or transactions with the in-

sured, recognizing the continued validity of the policy and treating it as still in force, the right to claim a forfeiture for any previous default is waived. *Id.* at 615–16, 130 Cal. Rptr. 211. This test for waiver in the context of insurance contracts parallels the general rules for finding a waiver. In general, to constitute a waiver, there must be an existing right, a knowledge of its existence, an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *Id.* at 615, 130 Cal. Rptr. 211. As discussed above, Old Line did have an existing right to declare an automatic termination. Old Line also had knowledge of that right. The record contains no evidence of an actual intention by Old Line to relinquish its right to declare the Policy lapsed, but the question remains as to whether Old Line's conduct of sending any or all of the three post-October letters constitutes "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."

■ An insurer waives its right to enforce a forfeiture when it assesses payment of the premium despite a default which would otherwise create a forfeiture. *Murray v. Home Benefit Life Ass'n,* 90 Cal. 402, 407, 27 P. 309 (1891). In *Murray,* the California Supreme Court held that a post-lapse letter requesting past payments was, in effect, an assertion that the policy remained in force and would remain in force until the due date specified in the letter. *Id.* at 408, 27 P. 309. While the insured in *Murray* did in fact tender (an unaccepted) payment in response to the insurer's letter, the fact of this tender did not affect the holding that "the legal effect of this letter was to waive the previous forfeiture, and continue the certificate in force until [the due date specified in the letter]." *Id.; Accord* Couch on Insurance § 32:306 at 619 (2d ed.1985) ("where an unconditional demand for payment is made with knowledge of ground for forfeiture, the forfeiture is waived, since the demand is inconsistent

---

**2.** A grace period, in insurance law, is "a period beyond the due date of premium (usually 30 or 31 days) during which insurance is continued in

force and during which the payment may be made to keep the policy in good standing." Black's Law Dictionary 697 (6th ed.1990).

therewith ...");  39 Cal. Jur.3d *Insurance Contracts* § 248 (1996).

The November 28, 1994 bill, the first bill Old Line sent Michelle after Old Line switched her to direct quarterly billing, was dated eight days after the November 20, 1996 automatic lapse.  Like the *Murray* letter, Old Line's November 28, 1994 bill requested past-due payments: the bold caption across the top of the page read "Notice of Payment Due October 20, 1994," the body of the notice stated a "Total Due" of $65.00, and a pre-addressed payment coupon appeared at the bottom of the page.  Therefore, under the authority of *Murray*, Old Line waived its right to declare an automatic forfeiture.

Old Line's pattern of misleading and equivocal communications bolsters this finding of waiver.  *See Pierson v. John Hancock Mutual Life Insurance Co.*, 262 Cal.App.2d 86, 68 Cal.Rptr. 487 (1968) (insurer waived right to declare a forfeiture after it had exhibited an inconsistent and misleading pattern of accepting payments from the insured).  Old Line switched Michelle to a quarterly billing plan at some point after she did not respond to the November 3, 1994 form letter providing the option of launching automatic check drafts.  Griesemer Dec. at 3.  By initiating this option of direct quarterly billing, Old Line somehow must have altered Michelle's original contractual obligation: after all, the terms of the original contract requiring monthly payments on the 20th of each month could no longer possibly remain in force under a quarterly payment system.  But the undisputed evidence shows that Old Line never provided Michelle with information regarding the terms and conditions of the new quarterly billing arrangement.  Old Line did send Michelle the November 28, 1994 bill covering three premiums, but that bill did not arrive until after the automatic lapse of the Policy, and it failed to specify what months it covered or a due date.

Furthermore, Old Line itself equivocates as to whether Michelle was obligated to pay quarterly or monthly premiums in late 1994.  While Griesemer did declare that Old Line had placed Michelle on a quarterly payment plan, Old Line also contends that the October premium was due October 20, 1994, the November premium due November 20, 1994,

and the December premium due December 20, 1994.  Griesemer Dec. at 4–5;  Joint Separate Statement of Undisputed Material Facts in Support of Cross–Motions for Summary Judgment at 7–9.  These monthly due dates are inconsistent with a plan calling for quarterly payments.

The circumstances surrounding the November 28, 1994 bill reveal two additional examples of equivocal and misleading communications.  First, Old Line captioned the November 28 bill "Notice of Payment Due October 20, 1994."  However, if the bill represents a request for a quarterly payment, the payment could not have been due on October 20, 1994, weeks before Old Line switched Michelle to quarterly billing.  And if the bill represents a request for three separate monthly premiums, as Old Line asserts that it does, this Court has yet another basis for a finding of waiver.  According to Old Line's own evidence, the November 28, 1994 bill covered two past-due premiums (due October 20, 1994 and November 20, 1994) and one premium not yet due (due December 20, 1994).  Old Line's Separate Statement of Undisputed Facts at 5.  By demanding payment of the December 20, 1994 premium, a payment not yet due, Old Line waived its right to declare a forfeiture.  A demand for a premium subsequent to a premium in default waives forfeiture for nonpayment of prior premium.  Couch on Insurance § 32:310 at 626 (2d ed.1985).

Old Line strongly urges that *Silva v. National American Life Insurance Company of California*, 58 Cal.App.3d 609, 130 Cal.Rptr. 211 (1976), mandates that the November 28 bill cannot have constituted a waiver.  *Silva* held that no waiver occurs where an insurance company, after an automatic lapse, sends the insured a correspondence asking for a payment to revive a former policy.  *Id.* at 616, 130 Cal.Rptr. 211.  Despite Old Line's urging to the contrary, *Silva* is readily distinguishable from the present case.  The *Silva* court characterized the letter, which in its second sentence explained to the insured that "[y]ou *were* insured by us as one of their borrowers," *id.* at 613, 130 Cal.Rptr. 211 (emphasis added), as "an attempt on the part of the carrier to negotiate with the assured for *reinstatement* of the lapsed policy."  *Id.* at 616, 130 Cal.Rptr. 211 (emphasis added).

The court pointed out that the *Silva* letter addressed the insured as "Having been, rather than Being" insured as of the date of the letter. *Id.* Therefore, the letter "does not recognize the validity of the coverage extended thereby." *Id.* In the present case, even Old Line appears to concede that the November 28 letter is not a reinstatement letter, but a bill requesting payment towards a current policy.

In the event that any doubt remains as to the propriety of finding a waiver in this case, it is worth emphasizing that evidence tending to show waiver is favorably regarded by the California courts. Forfeiture of a policy will be avoided on any reasonable showing. *Pierson v. John Hancock Mutual Life Insurance Co.,* 262 Cal.App.2d 86, 91, 68 Cal.Rptr. 487 (1968).

One important question remains: when did Old Line's waiver of its right to cancel the insurance coverage lapse?

> Where the conduct of the insurance company may be considered as a waiver of the forfeiture that would otherwise arise on nonpayment of premium when due, the law permits payments to be made until definite notice is given that failure to pay will work a forfeiture. Thus, where a company extends credit to the insured for payment of premium, it has no right to declare a forfeiture of the policy except after putting the insured in default by giving him or her the appropriate notice.

39 Cal. Jur.3d *Insurance Contracts* § 257 (1996).

Therefore, the waiver ended on the day when Michelle received notice of the termination. Because Michelle had died prior to receipt, the Policy remained in effect on the day she died. This court therefore GRANTS summary judgment in favor of Plaintiff Thomas Klotz.

## C. *Estoppel*

Because this Court has found a waiver, it is not necessary to address the issue of estoppel.

---

**3.** The "Payment of Proceeds" section of the Policy states:

> The face amount will be paid to the beneficiary immediately upon receipt of due proof of death of the insured if death occurs prior to the

## D. *Punitive Damages*

Plaintiff requests punitive damages of $50,000 in his Complaint. Plaintiff, however, offers no evidence tending to show oppressive, fraudulent, or malicious conduct by Old Line. Furthermore, due to the complexity of the facts and the law in this case, it is unlikely that any bad faith can be shown. Plaintiff's request is therefore DENIED.

## CONCLUSION

Based on the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment without allowance for punitive damages, and DENIES Defendant's motion for summary judgment.

Defendant is hereby ORDERED to pay Plaintiff the amount of $125,000 plus interest, less the amount owed for the October, November, and December premiums, $65.00.[3]

IT IS SO ORDERED.

---

expiry date. If death occurs in the grace period of an unpaid premium, an amount equal to the premium for one month will be deducted from the proceeds.